## COOPER *v.* REYNOLDS.

1. It is an axiom of the law that when a judgment of a court is offered in evidence collaterally in another suit, its validity cannot be questioned for errors which do not affect the jurisdiction of the court that rendered it.

2. Proceedings to enforce a debt or demand by attachment of the defendant's property partake of the character of suits, both *in rem* and *in personam*.

3. If there is personal service of process on the defendant or personal appearance by him the case is mainly a personal action; but if in the absence of either of these his property is attached and sold, it becomes essentially a proceeding *in rem* and is governed by principles applicable to that class of cases.

4. In this class of cases the court cannot proceed without a levy on the property of the defendant, and the judgment binds nothing but the property attached.

5. The seizure of the property of the defendant under the proper process of the court is therefore the foundation of the court's jurisdiction, and defective or irregular affidavits and publications of notice, though they might reverse a judgment in such case for error in departing from the directions of the statute do not render such a judgment or the subsequent proceedings void.

6. Where there is a valid writ and levy, a judgment of the court, an order of sale, and a sale and sheriff's deed, the proceeding cannot be held void when introduced collaterally in another suit.

ERROR to the Circuit Court for the Eastern District of Tennessee, the case being thus:

The code of Tennessee of 1857–8, under its chapter on ATTACHMENTS, thus provides:

§ 3455. Any person having a *debt* or *demand* due *at' the commencement of an action;* or a plaintiff *after action for any cause* has been brought, and either before or after judgment, may sue out an attachment at law or in equity against the property of a debtor or defendant in the following cases:

2. Where he is about to *remove* or has *removed* himself from the State.

5. Where he *absconds* or is absconding or concealing himself or property.

§ 3462. Attachments sued out in aid of a suit already brought shall be made returnable to the court or justice before whom the suit is pending.

§ 3469. In order to obtain an attachment the plaintiff, his agent or attorney, shall make oath in writing, stating the nature and amount of the debt or demand, and that it is a just claim, and also that *one or more of the causes enumerated in section 3455 exists.*

3470. It is no objection to the attachment that the bill, affidavit, or attachment states, in the alternative or otherwise,

more than one of the causes for which an attachment may be sued out.

§ 3471. The officer to whom application is made shall, before granting the attachment, require the plaintiff . . . to execute a bond in double the amount claimed to be due, . . . payable to the defendant and conditioned that the plaintiff will prosecute the attachment with effect, or in case of failure pay, &c.

§ 3472. The affidavit and bond shall be filed by the officer taking them in the court *to which the attachment is returnable, and shall constitute a part of the record in the case.*

Subsequent sections of the chapter provide for publication for a fixed time in a newspaper published in the county where the suit is brought of a memorandum or notice of the attachment, and declare :

§ 3522. This memorandum or notice shall contain the names of the parties, the style of the court to which the attachment is made returnable, the cause. alleged for suing it out, and the time and place at which the defendant is required to appear and defend the attachment suit.

§ 3524. The attachment and publication are in lieu of personal service upon the defendant, and the plaintiff may proceed upon the return of the attachment duly levied, as if the suit had been commenced by summons.

With these enactments of the code in force, W. G. Brownlow, on the 26th September, 1863, sued out a writ of summons in trespass, in the County Court of Knox County, Tennessee, against Reynolds and others, for false imprisonment, for ejecting him from the State, &c.; damages $25,000. To this writ the sheriff returned that " he had made search and that none of the defendants were to be found in his county." On the same day that he applied for the summons, and before the same person, one M. L. Hall, who, as clerk, had issued the summons in the trespass suit, Brownlow filed an affidavit, for an attachment against the property of Reynolds and the others. . The affidavit, after giving the names of the parties to the summons, ran thus :

"The plaintiff makes oath that he has a good cause of action against the defendants herein named in which he will be entitled to recover a very large sum. He further swears that all of defendants have *fled from this State* or that they so *abscond or conceal* themselves that the ordinary process of law cannot reach them; that he has this day instituted an action of trespass against them claiming $25,000. Plaintiff therefore prays for an ancillary attachment against their property in aid of this his suit."

An attachment bond being given in double the amount ($50,000) the attachment issued; the bond and attachment being, like the affidavit and summons had been, both dated September 26th. The attachment recited the above-given affidavit substantially as made, and directed the sheriff to attach so much of the property of Reynolds and the others as should be sufficient to satisfy the said amount of $25,000, and such estate so to secure that the same might be subject to further proceedings thereon at a court to be held on a day subsequent and specified. The sheriff returned to this last writ that he had attached all the right and title of Reynolds in and to one hundred and sixty acres of land in Knox County. Publication was ordered by the court to be made in the Knoxville Whig (a paper of the county), notifying to the defendants to appear and plead, answer or demur, or that the suit would be taken as confessed and proceeded in *ex parte* as to them. The record did not, however, set forth the notice which was published, if any was; though it did set forth the order for publication, which was entitled, "Order of publication, and *the publication as made in the Knoxville Whig;*" making it appear, perhaps, that the omission to set forth the notice was a clerical error.

The record of Brownlow's suit went on to say that the defendant, Reynolds, and the others being solemnly called to come into court, came not, but made default, and it appearing—the record proceeded—that the attachment had been duly levied on the defendant's property, and *that publication had been made according to law,* it was ordered that the plaintiff should recover his damages. These were assessed at

$25,000, and for this sum execution was ordered to issue, and that the sheriff should sell the one hundred and sixty acres of land attached. The land was accordingly sold under a *venditioni exponas*, and a deed made by the sheriff to one Cooper, by order of the purchaser. Cooper was put into possession by a writ of *haberi facias*, issued from the same court in the same proceeding. Being thus in possession, Reynolds, the original owner, brought ejectment in the court below against him. Cooper asserted title under the judicial proceedings above described. It was admitted that Reynolds had title to the land unless it had been divested by those proceedings. The record of the proceedings having been obtained from the Knox County Court, and put in evidence below, the defendant asked the court to instruct the jury:

"That the Court of Knox County had jurisdiction of attachment cases and actions of trespass, and that as it is declared in the judgment in the suit of *Brownlow* v. *Reynolds et al.* that the attachment was duly levied on the property of the defendants, and that publication had been made according to law, this adjudication was conclusive upon parties and privies, until the same should be reversed by a court of error; that the sheriff's deed to the defendant made, by virtue of the sale under and by virtue of the judgment of the Court of Knox County, communicated a good title to the premises in controversy to the defendant as against the plaintiff, and that the regularity of the proceedings in the said suit of *Brownlow* v. *Reynolds et al.* could not be collaterally inquired into in this cause."·

This instruction the court refused to give, but charged the jury:

"That the summons issued in the case of *Brownlow* v. *Reynolds et al.* was not served upon the plaintiff in this suit, and that the question was whether the attachment would bring him into court; that the affidavit upon which the attachment was issued, was not made in conformity to the attachment laws of Tennessee; that it did not show the court in which suit was brought, or state specifically the cause of action or nature thereof, as required under the decisions of the Supreme Court of Tennessee, so as to connect itself with the summons in the

action of trespass; that it did not appear that any publication was in fact made, and that the Court of Knox County acquired no jurisdiction of the cause; that the attachment and proceedings thereon were not sufficient to bring Reynolds before the court; that there was no authority for rendering the judgment, and that the levy of the attachment, the judgment of the court, the sale by the sheriff, and the sheriff's deed, were null and void, and conveyed no title."

Verdict and judgment having gone accordingly for the plaintiff, the question now here, on error by the other side, was whether this instruction was correct.

*Mr. Horace Maynard, with whom was Mr. T. A. R. Nelson, for the plaintiff in error:*

1. The affidavit is in substantial conformity to the requirements of the code (section 3469 and section 3455, sub-sections 2, 5). Its words "have fled from the State," are equivalent to the words "removed from the State," in sub-section 2. If not, its words "they so abscond or conceal themselves that the ordinary process of law cannot reach them," are equivalent to the words in sub-section 5; "where he absconds, or is absconding or concealing himself or property." This construction is sustained by section 3470, which provides that "it is no objection to the attachment that the bill, affidavit, or attachment states in the alternative, or otherwise, more than one of the causes for which an attachment may be sued out."

The instruction, "that the affidavit does not show the court in which suit was brought, or state specifically the cause of action or nature thereof, as required under the decisions of the Supreme Court of the State, so as to connect itself with the summons in the action of trespass mentioned," was erroneous, because it is provided in section 3472, in regard to the affidavits and bond mentioned in section 3469, that "the affidavit and bond shall be filed by the officer taking them in the court to which the attachment is returnable, and *shall constitute part of the record in the cause.*" Now in this case the affidavit was made before M. L. Hall, clerk of the

court, who issued the summons and the ancillary attachment; and the affidavit, bond, and attachment, being thus parts of the record, should be construed together and in connection with the summons, which is part of the same record. The summons, affidavit, bond, and attachment all bear the same date, viz., 26th September, 1863. The court is the same; the parties are the same; the amount of damages specified in the summons, affidavit, and ancillary attachment is the same. It is true that the affidavit does not specifically name the court in which the suit was brought, but, in view of the facts just referred to, and in view of the fact that the affidavit was deposited in and formed part of, and was brought from the records of the Court of Knox County, is it possible to doubt that it was part of the proceeding by summons and attachment?

2. The " order of publication and the publication as made in the Knoxville Whig," meant to be set out in the record, were a full compliance with the law. In addition to this it is expressly stated *in the judgment* that it appeared to the court *that the attachment had been duly levied, and that publication had been made according to law.* This is sufficient.*

3. But, however the preceding points may be, still as the general laws of the State confer jurisdiction in cases like this suit of Brownlow's was, all that the court below could properly do was to ascertain from the general laws whether the case tried in the Court of Knox County was within those laws; and having ascertained that it was, it should have presumed, *in a collateral inquiry*, and especially in reference to the action of a State tribunal, that the jurisdiction was rightfully exercised, and that the plaintiff in error acquired a valid title under the proceedings in the Circuit Court and by virtue of the sheriff's sale and deed.

*Mr. J. W. Moore, contra:*

The instructions asked for were rightly refused, and those

---

* Kilcrease *v.* Blythe, 6 Humphreys, 378; Hopper *v.* Fisher, 2 Head, 253; and Cornelius *v.* Davis, Id. 97; Davis *v.* Jones, 3 Id. 603; Birdsong *v.* Birdsong, 2 Id. 289; Gunn *v.* Mason, 2 Sneed, 637.

which were given were the proper ones to give. No service was made of the summons. It is not pretended that appearance was ever made. Then the affidavit was defective every way. It don't follow, in its terms, the code. Again, in *Woodfolk* v. *Whitmore*,[*] the Supreme Court of Tennessee say:

"An auxiliary writ of attachment is void, unless it is stated in the affidavit and alleged in the attachment that a suit has been brought by the plaintiff against the defendant, the nature thereof, the tribunal in which it is depending, the amount of damages laid in the action, and that the cause of action is just."

Yet further: there was no publication notifying to the defendants to appear. This the code requires. In short, everything is wrong in every part of the proceeding: and deriving vitality only from statute, the judgment and sale founded on it is void. A *void* sale can be the foundation of no title, whatever one merely irregular may be.

Mr. Justice MILLER delivered the opinion of the court.

The objections taken to the proceeding in attachment under which Cooper, the defendant below, claimed title, are, 1st, that by the law of Tennessee the attachment could not be issued at the beginning of the suit where the action was *ex delicto*, but could only be issued after suit commenced; 2d, that the affidavit was defective; 3d, that there was no publication of notice, as required by the statutes.

The question of the conformity of these proceedings to the requirements of the statutes under which they were had, has been very fully discussed by counsel, and if we were sitting here as on a writ of error to the judgment of the State court under which the land was sold, we might not find it easy to affirm or reverse the judgment on satisfactory grounds, notwithstanding the abundant citation of authorities from the Tennessee courts. But we occupy no such position. The record of this case is introduced collaterally as evidence of

---

[*] 5 Coldwell, 561. And see Thompson *v.* Carper, 11 Humphreys, 542; Morris *v.* Davis, 4 Sneed, 453; Smith *v.* Foster, 3 Coldwell, 140; Haynes *v.* Gates, 2 Head. 598.

title in another suit, between other parties, and before a court which has no jurisdiction to reverse or set aside that judgment, however erroneous it may be. Nor can it disregard that judgment, or refuse to give it effect, on any other ground than a want of jurisdiction in the court which rendered it.

It is of no avail, therefore, to show that there are errors in that record, unless they be such as prove that the court had no jurisdiction of the case, or that the judgment rendered was beyond its power. This principle has been often held by this court, and by all courts, and it takes rank as an axiom of the law. But that its applicability to the present case may be thoroughly understood, reference is made to the most important of the decided cases in this court and in the Supreme Court of Tennessee.*

It is necessary, therefore, in the present case to inquire whether the errors alleged affect the jurisdiction of the court.

It is as easy to give a general and comprehensive definition of the word jurisdiction as it is difficult to determine, in special cases, the precise conditions on which the right to exercise it depends. This right has reference to the power of the court over the parties, over the subject-matter, over the *res* or property in contest, and to the authority of the court to render the judgment or decree which it assumes to make.

By jurisdiction over the subject-matter is meant the nature of the cause of action and of the relief sought; and this is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.

Jurisdiction of the person is obtained by the service of

---

* Kempe's Lessee *v.* Kennedy, 5 Cranch, 173; Thompson *v.* Tolmie, 2 Peters, 157; Voorhees *v.* Bank of United States, 10 Id. 449; Grignon *v.* Astor, 2 Howard, 319; Harvey *v.* Tyler, 2 Wallace, 328; Florentine *v.* Barton, Id 210; McGoon *v.* Scales, 9 Id. 23; Stevenson *v.* McLean, 5 Humphrey, 332; Britain *v.* Cowen, Id. 315; Lee *v.* Crossna, 6 Id. 281; Kilcrease *v.* Blythe, Ib. 378; Reams *v.* McNail, 9 Id. 542; McGavock *v.* Bell, 3 Coldwell, 512.

process, or by the voluntary appearance of the party in the progress of the cause.

Jurisdiction of the *res* is obtained by a seizure under process of the court, whereby it is held to abide such order as the court may make concerning it. The power to render the decree or judgment which the court may undertake to make in the particular cause, depends upon the nature and extent of the authority vested in it by law in regard to the subject-matter of the cause.

It is to be observed that in reference to jurisdiction of the person, the statutes of the States have provided for several kinds of service of original process short of actual service on the party to be brought before the court, and the nature and effect of this service, and the purpose which it answers, depend altogether upon the effect given to it by the statute. So also while the general rule in regard to jurisdiction *in rem* requires the actual seizure and possession of the *res* by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for and represent the dominion of the court over the thing, and in effect subject it to the control of the court. Among this latter class is the levy of a writ of attachment or seizure of real estate, which being incapable of removal, and lying within the territorial jurisdiction of the court, is for all practical purposes brought under the jurisdiction of the court by the officer's levy of the writ and return of that fact to the court. So the writ of garnishment or attachment, or other form of service, on a party holding a fund which becomes the subject of litigation, brings that fund under the jurisdiction of the court, though the money may remain in the actual custody of one not an officer of the court.

When we come to the application of these principles to the case before us, that which leads to some embarrassment is the complex character of the proceeding which we are to consider.

Its essential purpose or nature is to establish, by the judgment of the court, a demand or claim against the defendant,

and to subject his property, lying within the territorial juris-
diction of the court, to the payment of that demand.

But the plaintiff is met at the commencement of his pro-
ceedings by the fact that the defendant is not within that
territorial jurisdiction, and cannot be served with any pro-
cess by which he can be brought personally within the power
of the court.   For this difficulty the statute has provided a
remedy.   It says that, upon affidavit being made of that
fact, a writ of attachment may be issued, and levied on
any of the defendant's property, and a publication may be
made warning him to appear, and that thereafter the court
may proceed in the case, whether he appears or not.

If the defendant appears the cause becomes mainly a suit
*in personam*, with the added incident, that the property
attached remains liable, under the control of the court, to
answer to any demand which may be established against
the defendant by the final judgment of the court.   But, if
there is no appearance of the defendant, and no service of
process on him, the case becomes, in its essential nature, a
proceeding *in rem*, the only effect of which is to subject the
property attached to the payment of the demand which the
court may find to be due to the plaintiff.

That such is the nature of this proceeding in this latter
class of cases, is clearly evinced by two well-established
propositions: first, the judgment of the court, though in
form a personal judgment against the defendant, has no
effect beyond the property attached in that suit.   No gen-
eral execution can be issued for any balance unpaid after
the attached property is exhausted.   No suit can be main-
tained on such a judgment in the same court or in any other,
nor can it be used as evidence in any other proceeding not
affecting the attached property, nor could the costs in that
proceeding be collected of defendant out of any other prop-
erty than that attached in the suit.   Second, the court, in
such a suit, cannot proceed unless the officer finds some
property of defendant on which to levy the writ of at-
tachment.   A return, that none can be found, is the end
of the case, and deprives the court of further jurisdiction,

though the publication may have been duly made and proven in court.

Now, in this class of cases, on what does the jurisdiction of the court depend? It seems to us that the seizure of the property, or that which, in this case, is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely *in rem*. Without this the court can proceed no further; with it the court can proceed to subject that property to the demand of plaintiff. If the writ of attachment is the lawful writ of the court, issued in proper form under the seal of the court, and if it is by the proper officer levied upon property liable to the attachment, when such a writ is returned into court, the power of the court over the *res* is established. The affidavit is the preliminary to issuing the writ. It may be a defective affidavit, or possibly the officer whose duty it is to issue the writ may have failed in some manner to observe all the requisite formalities; but the writ being issued and levied, the affidavit has served its purpose, and, though a revisory court might see in some such departure from the strict direction of the statute sufficient error to reverse the judgment, we are unable to see how that can deprive the court of the jurisdiction acquired by the writ levied upon defendant's property.

So also of the publication of notice. It is the duty of the court to order such publication, and to see that it has been properly made, and, undoubtedly, if there has been no such publication, a court of errors might reverse the judgment.

But when the writ has been issued, the property seized, and that property been condemned and sold, we cannot hold that the court had no jurisdiction for want of a sufficient publication of notice.

We do not deny that there are cases which, not partaking of the nature of proceedings *in rem*, when the judgment is to have an effect on personal rights, as in divorce suits, or in proceedings to compel conveyance, or other personal acts, in which the legislature has properly made the jurisdiction to depend on this publication of notice, or on bringing the

suit to the notice of the party in some other mode, when he is not within the territorial jurisdiction.

It is not denied that the court had authority to issue writs of attachment against the property of persons absconding the State, and that such writs could issue in actions for torts. The court has a general jurisdiction as to torts, and attachment is one of its remedial agencies in such cases. Whether the writ should have been issued simultaneously with the institution of the suit, or at some other stage of its progress, cannot be a question of jurisdiction. If it is, any other error which affected a party's rights, could as well be held to affect the jurisdiction.

Such departures from the rules which should guide the court in the conduct of a cause are not errors which render its action void.

The case of *Voorhees* v. *The Bank of the United States,** was much like this, and required stronger presumptions in favor of the jurisdiction of the court to sustain its acts than the one before us.

The defendant there, as here, held land under attachment proceedings against a non-resident who had never been served with process or appeared in the case. No affidavit was produced, nor publication of notice, nor appraisement of the property, but it was condemned and sold without waiting twelve months from the return of the writ, and without calling him at three different terms of the court, all of which are specially required by the act regulating the proceedings in Ohio, where they were had. This court held that there was sufficient evidence of jurisdiction in the court which rendered the judgment, notwithstanding the defects we have mentioned, and that they were not fatal in a collateral proceeding.

In the present case there is a sufficient writ of attachment, its levy and return, the judgment of the court, on trial by jury, the order to sell the property, the sale under the venditioni exponas, the writ of possession, sheriff's deed and

---

\* Cited *supra*, p. 316, note.

Statement of the case.

actual delivery of possession under order of the court. To hold them void is to overturn the uniform course of decision in this court, to unsettle titles to vast amounts of property, long held in reliance on those decisions, and, in our judgment, would be to sacrifice sound principle to barren technicalities; and, after a careful examination of the reported cases on this subject, we believe this to be the law, as held by the courts of Tennessee.

JUDGMENT REVERSED, AND A NEW TRIAL ORDERED.

Mr. Justice FIELD, dissenting.

I dissent from the judgment in this case. I am of opinion that the State court of Tennessee never acquired jurisdic tion in the case of *Brownlow* v. *Reynolds.*