PATRICK-MOSTELLER COMPANY v. JAMES R. BAKER & COMPANY, WAKEFIELD COMPANY, J. L. SMILEY & COMPANY, THE ALASKA PACIFIC HERRING COMPANY, AND BANK OF CALIFORNIA.

(Filed 15 December, 1920.)

**1. Courts—Appearance—Jurisdiction—Motions.**

Where a nonresident defendant enters a special appearance and denies the jurisdiction of the court, it is the court's first duty to ascertain its own jurisdiction to try and determine the case.

**2. Same—Attachment—Intervenor—Ownership— Issues— Proceedings in Rem—Nonresidents.**

Where proceedings in attachment are brought in an action for damages for breach of contract, and the funds attached are in a local bank, collected upon a draft sent to it by and drawn to the order of a foreign bank, it is the duty of the foreign bank, and other claimants to the fund, to intervene and assert their rights so that the issue as to ownership may be determined, otherwise this being of the nature of a proceeding *in rem*, the court would acquire jurisdiction to the extent only of the property attached, and a personal judgment against the nonresident defendant may not be properly rendered.

**3. Same—Parties.**

Where the proceeds of the collection of a draft payable to the order of a foreign bank has been attached in a local bank by the plaintiff as the funds of the nonresident bank, in an action for damages for breach of contract, and the issue of ownership has not been determined, and the defendant, the defaulting party to the contract, enters a special appearance and moves to dismiss for the want of jurisdiction of the court, on the ground alone that the proceeds of the draft were owned by and payable to the foreign bank, not connected with the contract, for the breach of which the plaintiff claims damages: *Held*, it was unnecessary that the foreign bank, which was not connected with the contract or its breach, should be made a party, and service by publication having been made, and the court having jurisdiction over the subject-matter by the proceedings, *quasi in rem*, the defendant's motion to dismiss, for want of the court's jurisdiction, was properly denied.

**4. Attachment—Funds—Ownership—Intervenors.**

It is erroneous for the trial judge to vacate an attachment regularly issued and levied on the funds in a resident bank claimed by the plaintiff to belong to its nonresident debtor, but paid upon a draft drawn to the order of a foreign bank, without having determined the issue as to the ownership of the funds attached, if the question had been properly raised by the interpleading of the foreign bank.

**5. Same—Nonresidents—Bonds—Action.**

The court, under the facts in this case, having vacated an attachment on the funds in a local bank derived from the payment of a draft made payable to the order of a foreign bank, all being parties to the action, wherein attachment was levied on the funds alleged to have belonged to the other defendant in an action for breach of contract, without the

determination of the issue as to ownership of the funds, and having directed that the funds be paid to the foreign bank upon its giving bond: *Held*, should the issue arise, and be determined in the plaintiff's favor, and the funds paid as allowed by the judgment, the plaintiff has a right of action on the bond required to be given by the resident bank in lieu of the funds held by it, which were released.

6. **Courts — Jurisdiction — Special Appearance — General Appearance — Pleadings—Waiver.**

Where, after entering a special appearance and pleading to the jurisdiction of the court, a nonresident defendant files an answer to the merits, the filing of the answer is equivalent to a general appearance, and the court may proceed to hear and determine the matter as if the said defendant had been personally served with process.

APPEAL by both parties from *Harding, J.,* at May Term, 1920, of CATAWBA.

This suit was brought to recover damages for the breach of a contract, whereby the defendants agreed to sell and deliver to the plaintiff one thousand cases of No. 1 Standard Alaska Pink Salmon, 1919 pack, 48 cans to the case, at the price of $1.50 per dozen cans, one and a half per cent off if paid for within ten days from date of shipment. Defendants delivered only 310 cases of the salmon, leaving 690 cases undelivered because of the rise in the market price from $1.50 to $2.25 per dozen cans, as plaintiff alleges. The difference in the market price, at the time of the breach, was $3 per case, making the total sum due plaintiff for the breach $2,070. The plaintiff made the Bank of California a party defendant, and asks judgment against it and the other defendants. A warrant of attachment was issued, the defendants all being nonresidents, and was levied on funds in the hands of the Bank of Hickory, they being the proceeds of a draft for $4,205, of Wakefield & Company, drawn to the order of the Bank of California, for value received, on the plaintiff, to which draft was originally attached a bill of lading for the goods shipped by defendants, except the Bank of California. This draft was sent by the latter bank to the Bank of Hickory, N. C., for collection, and was paid by plaintiffs at that bank, and the bill of lading taken up, the proceeds of the collection being the property attached.

Defendants moved to dismiss the action, because the defendants were nonresidents, and there was no personal service, but only publication for them; that the Bank of California was in no way connected with the contract sued on, and that the money in the hands of the local bank belonged to said Bank of California, and its attachment did not give the court jurisdiction. The court did not pass upon defendants' motion to dismiss, under their special appearance, until the evidence was closed, but in the meantime defendants had filed an answer, and the case proceeded to trial upon the issues submitted, which, with the answers thereto, are as follows:

"1. Did the plaintiff enter into the contract with the defendant as alleged? Answer: 'Yes (as to James R. Baker & Company and Wakefield & Company.')

"2. Did the defendant breach the said contract? Answer: 'Yes (as to James R. Baker & Company and Wakefield & Company.')

"3. What damages, if any, is the plaintiff entitled to recover? Answer: '$2,070'."

The court then signed the following judgment:

"This cause coming on to be heard, and being heard before his Honor, W. F. Harding, judge, and a jury, at the May Term, 1920, of Catawba Superior Court, and at the close of plaintiff's evidence, the defendants move for judgment as of nonsuit, and the court being of the opinion that the plaintiff has failed to make out his case against the defendants, J. L. Smiley & Company, Alaska Herring and Sardine Company, and the Bank of California. It is on motion of Councill & Yount, attorneys for defendants, J. L. Smiley & Company, Alaska Herring and Sardine Company, and the Bank of California, ordered that as to these defendants the action be dismissed, and that they recover of the plaintiff the cost of this action, to be taxed by the clerk of this court, and it is further ordered that the attachment issued in this cause be dissolved, and the money attached in the Bank of Hickory be turned over to the Bank of California, N. A., or to Councill & Yount, as attorneys for said Bank of California, the same being the amount of the proceeds of the draft on Wakefield & Company still remaining in said bank. It is further ordered that the Bank of California enter into a bond in the sum of $2,300, to be approved by the clerk of this court, and upon giving such bond, that the funds in the Bank of Hickory be turned over to the said Bank of California, and the cost of the bond to be taxed in said bill of cost."

The court then gave a separate judgment upon the verdict against defendants, Baker & Company, and Wakefield & Company, for $2,070, and costs. Both parties appealed.

*Thomas P. Pruitt, E. B. Cline, and W. A. Self for plaintiffs.*
*Councill & Yount for defendants.*

WALKER, J., after stating the case: It will be impossible to decide this case upon its true merits, at this time, because it has been tried with slight regard to correct procedure, and the court has been misled into giving judgment without ascertaining all of the pertinent facts.

When the plaintiff brought this action and caused an attachment to be issued and levied on the funds in the Bank of Hickory, because, as he alleged, they belonged to the defendant Wakefield & Company, who

drew the draft payable to the order of the Bank of California, it became the first duty of the court to ascertain its own jurisdiction to try and determine the case, as it was admitted that the defendants were nonresidents, and the defendants denied, under a special appearance, that such jurisdiction existed. Again (when the funds in the Bank of Hickory were attached, it was required of any one claiming those funds, as does the Bank of California in this case, to intervene and assert its claim, setting forth the facts upon which it based its right to them in its affidavit or petition for intervention, which could be answered by the plaintiff, and thus the facts could be found, and the court could determine as to the ownership of the funds. If there is no intervention and claim of the funds by a third party, or if there is such, and the question of ownership is finally decided in favor of the plaintiff and against the claim of such third party, the court would acquire jurisdiction to the extent of the property attached, but not beyond this, so that a personal judgment could not be rendered against the defendant for any sum in excess of the amount the property brings at a sale thereof by the sheriff under the attachment and the judgment, or order, of the court. The property represents and defines the jurisdiction of the court, and the extent thereof. *Winfree v. Bagley,* 102 N. C., 515; *Cooper v. Reynolds,* 10 Wallace (U. S.), 308 (19 L. Ed., 931); *Pennoyer v. Neff,* 95 U. S., 714 (24 L. Ed., 565). In the case last cited, the Court held that except in cases affecting the personal status of the plaintiff, and cases in which that mode of service may be considered to have been assented to in advance, the substituted service of process by publication, allowed by the law of Oregon, and by similar laws in other States where actions are brought against nonresidents, is effectual only where, in connection with process against the person for commencing the action, property in the State is brought under the control of the court, and subjected to its disposition by process adapted to that purpose, or where the judgment is sought as a means of reaching such property, or affecting some interest therein; in other words, where the action is in the nature of a proceeding *in rem.* There is in that case a clear and concise statement of the purpose and nature of attachment proceedings, and their effect upon the jurisdiction of the particular court wherein they are pending, by *Justice Miller,* which was quoted from *Cooper v. Reynolds, supra,* in which the opinion of the Court was delivered by *Justice Field.* In *Winfree v. Bagley, supra,* this Court adopts the law as declared in those two cases, and quotes from *Pennoyer v. Neff, supra,* as follows: "The substituted service of process by publication allowed by the laws of Oregon (which is the same as in North Carolina), and by similar laws in other States, where actions are brought against nonresidents, is effectual only where, in connection with process against the person for commencing the action, property in the State is

brought under the conctrol of the court, and subject to its disposition by process adapted for that purpose, or where the judgment is sought as a means of reaching such property or affecting some interest therein. See, also, *Evans v. Alridge,* 133 N. C., 378. The same doctrine was thus stated, in accordance with the above cited cases, in *Goodwin v. Claytor,* 137 N. C., at p. 230: "The judgment against the garnishee seems to be expressly warranted and contemplated by the statute (The Code, sec. 364), and that against the defendant is void as a personal judgment, as the court could acquire no jurisdiction to proceed against him except in so far as it could by its process levy upon or seize his property, and in this respect the suit is to all intents and purposes in the nature of a proceeding *in rem* and not one *in personam,*" citing *Cooper v. Reynolds, supra; Pennoyer v. Neff, supra; Winfree v. Bagley, supra; Fisher v. Ins. Co.,* 136 N. C., 217; *Ins. Co. v. Stratley,* 172 U. S., 602. See, also, *Lemly v. Ellis,* 143 N. C., 200, a case having some features in common with this one.

But we conclude that the plaintiff's judgment in the case is valid, as to Wakefield & Company, and Baker & Company, and enforceable. against them as a personal one, because the ground of the said defendants' motion to dismiss is that "jurisdiction was obtained by the attachment of the proceeds of a draft payable to the Bank of California, N. A., which was in no way connected with the contract, for the breach of which the plaintiff claimed damages." It did not have to be connected with the contract or its breach. The only question was whether the property, or funds, attached belonged to that bank or to the defendants, against whom the judgment was rendered, and an issue as to the true ownership of this property was neither raised by proper pleading or procedure of the bank, nor was any such issue tendered by it. The bank could have intervened in the attachment proceedings and set up its title to the funds, and have had its ownership of them determined. *Wallace Bros. v. Robeson,* 100 N. C., 206; *Blair v. Puryear,* 87 N. C., 101. But the Bank of California did not formally proceed, and no trial was had with reference to its ownership. The court dismissed the action as to the defendants J. L. Smiley & Company, Alaska Herring & Sardine Company, and the Bank of California. This was right, as the bank was not a proper party to the principal action, having no connection with the contract sued on, or its breach, and the jury found in favor of the other two defendants. The court further dissolved the attachment and ordered the funds in the Hickory Bank, which had been attached, to be turned over to the Bank of California, upon its giving bond, to be approved by the clerk of the court, in the sum of $2,300. Plaintiff excepted to this judgment and appealed. We do not know why the court vacated the attachment, as it was regularly issued. If it

did so, because it supposed that the Bank of California was the owner of the funds which had been attached, and not because of any irregularity, or defect, in issuing the attachment, it was error, because there had been no trial or hearing as to the bank's title to the funds, and the order vacating the attachment was erroneous.

The ruling of the court vacating the attachment is reversed, but it is directed that the California Bank be allowed to file an affidavit, or petition, for intervention to try its said title, the plaintiff being allowed to answer, and then, that further proceedings be had in that matter according to the course and practice of the Court. The Bank of California may raise any other question touching the validity of the attachment. As Wakefield & Company and James R. Baker & Company answered, and the issues raised thereby were tried to a verdict, which was in favor of plaintiff, the judgment upon said verdict is affirmed, and plaintiff may enforce his judgment, as he may be advised, except that no part of the funds in the possession of the Bank of Hickory shall be applied thereto, or to any execution issued thereon, until the question as to the ownership of that fund, and the validity of the attachment, is finally determined, as hereinbefore indicated. If it is found that these funds, for any reason, belong to the Bank of California, or that it is entitled to have the same turned over to it, they will be paid or delivered to it, but if found not to belong to that bank, or that it is not entitled to the same, and that the defendants named in the final judgment, at last May term, to wit: Wakefield & Company, and Baker & Company, are the owners thereof, or are entitled to the fund, the plaintiff may proceed and have the funds in the Hickory Bank applied in payment of its judgment, or, if the funds have been delivered or paid to the Bank of California, it may have judgment upon the bond filed in lieu thereof by that bank, upon reasonable notice to the parties thereto, and if, after exhausting the fund or the bond, its judgment is not fully paid, it may have execution for the balance, or proceed to collect the same as the law allows. The final judgment of May term against Wakefield & Company, and Baker & Company, is held to be valid against them, upon the ground that their action in the case and their answer were equivalent to a general appearance, and besides their motion to dismiss upon the special appearance was properly denied, because the ground of the motion, as stated therein, was, and is, insufficient for vacating the attachment, but is sufficient ground for the nonsuit as to the Bank of California, it having been no party to the contract, and not implicated in its breach.

One-half of the costs of this Court, in plaintiffs' appeal, against plaintiff, and the other half against the Bank of California; and in the defendants' appeal, costs of the Court against them.

Plaintiffs' appeal, error.

Defendants' appeal, modified and affirmed.