MARGARET McMAHON, complainant,

*v.*

VINCENT AMOROSO, JR., et al., defendants.

HERMAN M. DIAMOND, defendant-appellant,

*v.*

JOHN J. McMAHON, defendant-respondent.

[Submitted October term, 1930. Decided May 18th, 1931.]

*Mr. John Warren,* for the appellant.

*Mr. Peter Bentley,* for the respondent.

The opinion of the court was delivered by

HETFIELD, J.

The respondent, John J. McMahon, petitioned the court of chancery for an order directing that certain surplus moneys received by the sheriff of Hudson county, from a sale of lands under a foreclosure decree, be paid to the petitioner. The facts presented by the record show that the property in question, which was situated in Woodcliffe, Bergen township, Hudson county, was conveyed to the appellant, Herman M. Diamond, by deed of Anna B. Amoroso and husband, which was recorded on March 24th, 1920. After acquiring the property, the appellant engaged Vincent Amoroso, Jr., to make some alterations and construct a new addition to the dwelling, and Amoroso sublet some of the work to DeRiso Brothers, Incorporated, but failed to pay the subcontractor the full amount due it under the subcontract. By reason thereof, a mechanics' lien suit was instituted in the district court of the first judicial district of the county of Hudson, on August 23d, 1920, against Vincent Amoroso, Jr., as builder, and Herman M. Diamond, as owner. On the same date, a lien claim and certificate of commencement of suit were filed in the county clerk's office, and subsequently, stipulations were entered into between the lien claimant and the owner, whereby an appearance was entered on behalf of the owner, and the time for issuing summons was extended. It does not appear that service of process was ever had on the owner, Diamond. On January 6th, 1921, the clerk of the district court filed in the county clerk's office, a certificate stating that on December 27th, 1920, judgment was entered in the said district court, for the sum of $500 debt, and $30.30 costs, in favor of DeRiso Brothers, Incorporated, and generally against the defendant, Vincent Amoroso, Jr., and specially against the lands of Diamond, and on the strength of said certificate, judgment was accordingly entered in the Hudson county circuit court on the date of filing said certificate, and execution on the judgment was issued out of said court, and on May 5th, 1921, the sheriff sold the lands in question to James M. DeRiso, in consideration of the sum of $625, and on June 21st, 1921, DeRiso and his wife con-

veyed the property to John J. McMahon, the respondent herein. Both deeds were recorded in the Hudson county register's office. On September 1st, 1922, Diamond, the appellant, obtained a writ of *certiorari* to review the entire proceedings had in respect to the mechanics' lien suit, including the sale made by the sheriff. Thereafter, on the 5th day of October, 1926, an order was entered dismissing the writ for lack of prosecution. The appellant, in his argument, claims that service of the notice of the motion to dismiss the writ, was illegal, but it does not appear that any attempt was ever made to have the case reinstated.

After McMahon had acquired title, proceedings were instituted by Margaret McMahon to foreclose a mortgage which was placed on the premises prior to the institution of the mechanics' lien suit. A writ of *fieri facias* was issued out of the court of chancery, directed to the sheriff of Hudson county, who sold the property, and afterward deposited with the clerk in chancery surplus moneys amounting to $10,039.33. Proceedings were then instituted by respondent to obtain the fund so deposited, and the matter was referred by the chancellor to a special master, for the purpose of ascertaining who was entitled to same.

The appellant claimed the surplus money by virtue of the deed from Amoroso, and contended that the respondent, McMahon, had no interest in the fund, for the reason that the proceedings instituted in the district court, to enforce the mechanics' lien, were not prosecuted in accordance with the statute, and, consequently, the judgment entered in the circuit court was a nullity, and therefore no title passed to respondent at the sale held by the sheriff under the execution issued on the circuit court judgment, and that title still remained in appellant, who was entitled to the surplus moneys. The special master, after hearing the evidence which related mainly to the various steps taken in the mechanics' lien suit, concluded that the appellant was entitled to receive the surplus fund, and filed his report accordingly. Exceptions were taken to the said report, and were sustained by the court of chancery, which held that the respondent was entitled to the

fund, on the grounds that under section 15 of the act relating to sales of land, &c. (*4 Comp. Stat. p. 4679*), a deed given by a sheriff under execution of a law court cannot be subjected to a collateral attack.

While we agree with the conclusions arrived at by the court of chancery, we are not in accord with its construction of section 15 of the statute referred to. The fourteenth and fifteenth sections of the said act provide as follows:

"14. That the conveyance of any land or real estate sold by any sheriff or other officer, or by auditors, in pursuance of a decree, judgment, execution or order of a court, heretofore or hereafter made and duly acknowledged or approved, and the record thereof, or a certified copy of such record, shall be good and sufficient *prima facie* evidence of the truth of the recital, in the said deed or conveyance contained. *Rev. 1877 p. 1045.*

"15. That the provisions of the last preceding section shall apply to all deeds, declarations of sale and conveyances, duly acknowledged or proved heretofore or hereafter made by or by authority of any public or municipal authority, authorized or empowered by any law of the state to make and execute or to direct or procure the making and execution of any deed, declaration of sale or conveyance; and the proceedings upon which such deeds, declarations of sale and conveyances are founded shall not be subject to be questioned collaterally, but may be at any time reviewed by *certiorari* or other proper proceeding in the supreme or circuit courts. *Rev. 1877 p. 1045.*"

It seems clear to us that the purpose of the legislature in enacting these two provisions, was that section 14 should apply to conveyances of land made by any officer, in pursuance of a decree, judgment, execution or order of a court; and while section 15 expressly states that the provisions of section 14 shall apply to all conveyances referred to in section 15, we do not think the legislature intended the converse to be the case. In other words, the prohibition against a collateral attack, referred to in said section 15, was only intended to apply to conveyances made by or by authority of any public or municipal authority so authorized or empowered by any law of the state, and did not extend to a deed given by a sheriff under an execution of a court. In the case of *Bozarth* v. *Egg Harbor City et al., 85 N. J. Law 412,* Mr. Justice Swayze, speaking for the supreme court, and referring

to section 15 stated: "The object of this act was to do away with the inconvenience of trying out the validity of tax sales, collaterally in an action of ejectment, which might result adversely to the claim under the tax sale and in the loss to the municipality of taxes justly due."

The next question which presents itself for solution, is whether, in this proceeding, the judgment entered in the circuit court can be collaterally impeached or called in question, when there is no evidence of fraud, and the record shows that the district court had jurisdiction of the subject-matter, and had acquired jurisdiction over the person of the defendant, by reason of his entering a voluntary appearance, by stipulation. We think that the judgment could only be attacked and its validity tested, by a direct proceeding, which the appellant started to do, but for some reason, permitted the writ of *certiorari* to be dismissed and made no further effort along that line. He now wants to do collaterally what he could and should have done directly. While the record indicates that there were certain irregularities in the district court proceedings, which may have been held erroheous in a direct proceeding, we are unable to find anything in the case which would render the judgment or the sheriff's conveyance void; and the court having had jurisdiction to render the judgment, and having rendered it, the law, when the judgment is collaterally attacked, will make all presumptions necessary to sustain it.

"It is of no avail," said the court in *Cooper* v. *Reynolds, 77 U. S. 308,* "to show that there are errors in the record, unless they be such as prove that the court had no jurisdiction of the case, or that the judgment rendered was beyond its power. This principle has been often held by this court and by all courts, and it takes rank as an axiom of law."

It is well settled, that in the absence of fraud of the parties, a judgment of a court of general jurisdiction cannot be collaterally impeached if the court had jurisdiction of the subject-matter of the controversy and the parties. *White* v. *Crow, 110 U. S. 183.*

The decree order appealed from will be affirmed for the reasons above stated.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.