**Charles A. McGLASKER,
Plaintiff,**

v.

**Fate CALTON, etc., Defendant.**

**Civ. A. No. 75–161–N.**

United States District Court,
M. D. Alabama, N. D.

July 17, 1975.

---

Anne M. Weiss, Montgomery, Ala., for plaintiff.

Jimmy S. Calton, Eufaula, Ala., for defendant.

## MEMORANDUM OPINION

VARNER, District Judge.

This cause is submitted on Defendant Calton's motion for summary judgment and the affidavits of various persons made in support and in opposition to said motion for summary judgment.

This cause, as finally amended, claims damages, costs and general relief against the Defendant, Fate Calton, individually and in his capacity as Judge of the Eastern District Court of Barbour County, Alabama, under 42 U.S.C. § 1983.

Defendant Calton's affidavits contain general conclusory statements by various people that all of the acts complained of which Judge Calton actually did were done in his capacity as Judge of said Court. That conclusion should usually be made by this Court rather than by witnesses. Judge Calton's motion for summary judgment is based on his contention that, if he were acting as Judge at the times of the acts complained of, he is immune from suit therefor under the doctrine of judicial immunity and, if he were not acting as Judge at said times, no federal jurisdiction is stated because he was not acting under color of State law as required by § 1983.

The Plaintiff's affidavit is far more illuminating and gives this Court both an idea of what the Plaintiff contends happened on the occasion and a clear, undenied factual statement from which this Court may decide whether or not Judge Calton was actually acting within his jurisdiction at the times complained of.

According to Plaintiff's affidavit, before March 5, 1975, he was a public schoolteacher in Barbour County, Alabama, and on March 3, 1975, was in the Court presided over by Judge Fate Calton on a charge of driving without a driver's license. Judge Calton informed the Plaintiff that he had bribed the Department of Public Safety, had perjured himself, and was in contempt of Court. Judge Calton then directed an officer to

take Plaintiff downstairs and lock him up. On the following day, in chambers, the Court informed the Plaintiff that he was, as a schoolteacher, setting a bad example for students and that charges against him would be dropped if he would leave Barbour County and go somewhere else and start over. The Court "suggested" that the Plaintiff write letters to the Superintendent of Education resigning his teaching job and directing the Superintendent to pay the Eufaula Bank and Trust Company and the Central Bank of Eufaula $212.-80, which the Plaintiff owed them, from money held by the Board of Education for payment of Plaintiff's salary.

■ Based on this undenied testimony, this Court is of the opinion that Judge Calton, at the time he sentenced the Plaintiff to 30 days in jail if sentenced for contempt of Court[1] and at the time he bargained with the Plaintiff to dismiss proceedings against him if the Plaintiff would pay his debts and leave Barbour County,[2] acted without legal authority.

■ The Court further finds that Judge Calton was acting under color of State law. Clearly, he would not have been in the position to do what he did had he not been in the position of being Judge at that time and place.

The worst that can be said for Judge Calton's actions is that, when the Plaintiff was brought before him for a charge of driving while his driver's license was revoked (and possibly for failure to appear in Court to respond to several prior violations), the Court considered other charges: that in the fall of 1974 Plaintiff received two speeding tickets and a ticket for an improper license plate on his automobile; that on November 26, 1974, Plaintiff received a ticket for failure to appear in Court and his driver's license was revoked; that Plaintiff mailed $60.00 to the State Department of Public Safety in an effort to pay one of his fines and to have his driver's license reinstated; and that Plaintiff had outstanding indebtedness to lending organizations in the City of Eufaula of over $200.00. As a result of all of these matters or one or more of them, Judge Calton felt that the Plaintiff was not setting a good example for students which he taught in a public school in Barbour County and, therefore, bargained with the Plaintiff that, if Plaintiff would leave his job in Barbour County on the basis that his effectiveness as a public schoolteacher had been terminated by the actions aforesaid, the Court would dismiss all pending charges against the Plaintiff. Further, the Defendant Judge Calton recommended that the Plaintiff agree that the Superintendent of Education withhold from Plaintiff's salary check a sum of money sufficient to pay Plaintiff's outstanding indebtedness to the two lending institutions in Eufaula. Under such coercion as then existed, the Plaintiff agreed to Judge Calton's suggestions.

The motion for summary judgment places squarely before this Court the question of whether judicial immunity applies to bar suit against Judge Calton for his wrongful conduct associated with disposition of the case or cases of the Plaintiff in the Barbour County Court.

The leading American authority on the subject of judicial immunity is the case of *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646, in which the Court held that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts,

1. While Plaintiff contends that he was sentenced for contempt, apparently for failure to respond to several traffic summons, a court record submitted by Defendant Judge Calton shows that his sentence was for driving while Plaintiff's license was revoked. The maximum allowable sentence for contempt of Judge Calton's Court is five days, Act No. 889, § 15, 1969 Legislature, while the maximum sentence for driving after one's license had been revoked is 30 days, Alabama Code, Title 36, § 70.

2. This Court has found no authority for a court of inferior jurisdiction to settle a case in this fashion.

even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly. In discussing what is or is not a judicial act, the Court stated the following:

"A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, *should hold a particular act to be a public offence, which is not by the law made an offence,* and proceed to the arrest and trial of a party charged with such act, or *should sentence a party convicted to a greater punishment than that authorized by the law* upon its proper construction, *no per-*

*sonal liability* to civil action for such acts *would attach* to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption and liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons. [13 Wall. 351, 352, 80 U.S. 351, 352, 20 L.Ed. 646]. * * *." (emphasis added)

Plaintiff relies primarily on two cases: *Cross v. Byrum, infra,* and *Wade v. Bethesda Hospital, infra.* The Court in *Cross v. Byrum,* 348 F.Supp. 196, emphasizes that when immunity is invoked by motion to dismiss it should not be granted unless nonliability appears to a certainty from the pleadings but that, after development of evidentiary facts, the case might well follow the fate of *People of Mississippi ex rel Giles v. Thomas,* 464 F.2d 156, 159 (5 C.C.A. 1972) in which plaintiff under 42 U.S.C. § 1983 sued the justice of peace, among others, for her wrongful eviction after summons requiring her to show cause on or before September 27, 1970, why she should not be evicted for nonpayment of rent. The law provided that she respond in not less than three nor more than five days from September 20, 1970, so the return date was in error.[3] On September 25, 1970, the defendant jus-

---

3. There the statute provided for default judgment on September 25 if the show cause order had been returnable by that day. By error the show cause order was returnable September 27 after the court's jurisdiction had lapsed. The default judgment was supported by a void show cause order and was, therefore, void because in excess of jurisdiction of the person of Mrs. Giles. Yet, the act was judicial in nature, and the justice of peace was immune to suit for his error.

tice of peace entered a default judgment against the tenant (plaintiff in the § 1983 suit) ordering her eviction. The Court of Appeals found the "trial court was correct in ruling that those defendants (including the justice of peace) were immune from suit as judicial officers under the circumstances of this case", at pp. 159–160, citing *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L. Ed.2d 288. In *Pierson,* at p. 554, 87 S. Ct. at p. 1218, the Court reaffirmed the principles set out in *Bradley v. Fisher, supra,* and observed that:

> "It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation."

Similar principles were reapplied in 1951 to shield the legislative branch with immunity from suits for their legislative actions. *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019.

*Wade v. Bethesda Hospital,* 337 F. Supp. 671, is a suit under 42 U.S.C. § 1983 against a probate judge for ordering sterilization of the plaintiff. The Court said, at p. 673:

> "[T]hat the judge must have both jurisdiction over the person and the subject matter if he is to be immune from suit for an act performed in his judicial capacity, \* \* \*. A third element, however, also enters the concept of jurisdiction as used in this context. The third element is the power of the court to render the particular decision which was given. See *Cooper v. Reynolds,* 77 U.S. 308, 316, 10 Wall. 308, 19 L.Ed. 931 (1870); *National Malleable & Steel Castings Co. v. Goodlet,* 195 F.2d 8 (7th Cir. 1952), \* \* \*."

That Court, however, tempered the third element by stating immediately thereafter, the following correct principle of law:

> "A judge will not lose his immunity because of a mere error in judgment even though the resultant act be in excess of the Court's jurisdiction. *Ryan v. Scoggin* [245 F.2d 54 (10 CCA)]; *O'Bryan v. Chandler,* 352 F.2d 987 (10 Cir. 1965), cert. den. 384 U.S. 926, 86 S.Ct. 1444, 16 L.Ed.2d 530, rehearing den. 385 U.S. 889, 87 S.Ct. 13, 17 L. Ed.2d 123.

This Court finds no such "third element" in the host of authority on judicial immunity in this Circuit. *Cooper v. Reynolds, supra,* involves a definition of "jurisdiction" foreign to that involved in judicial-immunity cases.

The courts in Alabama have held that one committed for contempt by a court of general jurisdiction has no right of action against the judge thereof for false imprisonment, even though the latter acted in excess of his jurisdiction and was actuated by malicious motives and the prisoner was released by habeas corpus proceedings or otherwise. *Early v. Fitzpatrick,* 161 Ala. 171, 49 So. 686. It has been held, however, that, if the committing officer is without jurisdiction in the proceeding in which the order of commitment for contempt is made, or is without statutory authority to commit for the alleged contempt, the judge is properly held liable for that false imprisonment. *Harkness v. Hyde,* 31 Idaho 784, 176 P. 885; *Holz v. Rediske,* 116 Wis. 353, 92 N.W. 1105. Immunity extends to judges of inferior courts where the acts complained of are committed while they are acting wholly within their jurisdiction, although they act maliciously or corruptly. *Broom v. Douglass,* 175 Ala. 268, 57 So. 860.

Immunity is not extended to judges in order to protect them as individuals but to protect the interests of society upon the theory that society is best served if the judge is left entirely

free to act upon his independent convictions, uninfluenced by fear of consequences personal to himself. *Bradley v. Fisher, supra.*

■ The immunity has been stated to apply in any action for damages for the opinion he may deliver as such judge, or for any rule or action he may take for conduct of the business of his court. *Rammage v. Kendall,* 168 Ky. 26, 181 S. W. 631.

In 46 Am.Jur.2d, Judges, § 73, p. 143, the following appears:

"Generally speaking, the exemption from liability extends to all grades of judges. It is said to apply to the highest judge of the nation and to the lowest officer who sits as a court and tries petty cases. * * * As to such judges the exemption is absolute and they are not liable even though they acted maliciously or corruptly." (citations omitted)

■ This Court is of the opinion that, whether Judge Calton is immune from suit for the acts charged in this cause against him, depends upon whether Judge Calton was acting within his jurisdiction at the time of said acts. Jurisdiction, for this purpose, has been defined as the authority to act officially in the matter then in hand, *Jones v. Brown,* 54 Iowa 74, 6 N.W. 140; *State v. United States F. & G. Co.,* 217 Miss. 567, 64 So.2d 697, or as the power to hear and determine a cause, *Trammell v. Russellville,* 34 Ark. 105. It has also been said that jurisdiction means judicial power to hear and determine a matter, not the manner, method or corruptness of the exercise of that power. *O'Regan v. Schermerhorn,* 25 N.J.Misc. 1, 50 A.2d 10.

■ A distinction must be observed between the acts which are merely in excess of jurisdiction and the clear absence of all jurisdiction over the subject matter. As pointed out in 46 Am.Jur.2d, Judges, § 77, p. 148:

" 'Excess of jurisdiction', as distinguished from the entire absence of jurisdiction, means that the act, although within the general power of the judge, is not authorized, and therefore void, with respect to the particular case, because the conditions which alone authorize exercise of his general power in that particular case are wanting, and hence the judicial power is not in fact lawfully invoked."

It has also been indicated that, where a judge is called upon to decide the question of his jurisdiction and decides it wrongly, he is not liable. *Ray v. Huddleston,* (D.C.Ky.) 212 F.Supp. 343, affm'd. (CA 6) 327 F.2d 61.

In the instant case, Judge Calton had criminal jurisdiction over the offenses apparently submitted to him; he had authority to commit the Plaintiff to jail for contempt for five days and for driving while his driver's license was revoked for 30 days in the County Jail; he had authority and a wide discretion in determining Plaintiff's sentence. He had a duty to consider Plaintiff's attitude toward courts as exemplified by Plaintiff's refusing to come to Court on several prior occasions when he had been directed to so appear to answer traffic charges against him. Judge Calton might under proper circumstances have properly considered Plaintiff's conviction in all courts for traffic charges all during the preceding few months; and he had, at least, some discretion in deciding whether the best interests of the Plaintiff and the public would be served by granting leniency if justified by the attitude of the Plaintiff shown in Court on the day of trial or within the next few days. While that discretion may not have included a voluntary suspension of that sentence even with the consent of the Plaintiff, there was jurisdiction to exercise substantial discretion in enforcing the law by that Court.

In the opinion of this Court, the acts of the Defendant Judge Calton are comparable, in the language of the Supreme Court in *Bradley v. Fisher, supra,* to those of "a judge of a criminal court, invested with general criminal jurisdiction

over offenses committed within a certain district * * *," who "should sentence a party convicted to a greater punishment than that authorized by law on its proper construction," and, therefore, no personal liability to civil action would attach to that judge, although those acts would be in excess of his jurisdiction.

For the reasons set out hereinabove, this Court is of the opinion that Defendant Calton's motion for summary judgment should be granted as there are no material facts in issue for determination by the Court and as Defendant Calton's acts, at worst, constituted no more than acts in excess of jurisdiction rather than acts done without jurisdiction. Judgment will enter accordingly.