EAST ASIATIC COMPANY, LTD., Plaintiff,

v.

INDOMAR, LTD., Defendant,

v.

The SUBFREIGHTS OF the M/V AURORA II.

No. 75 Civ. 2648 (CHT).

United States District Court, S. D. New York.

Nov. 17, 1976.

Haight, Gardner, Poor & Havens, New York City, for plaintiff East Asiatic Co., Ltd.; John J. Reilly, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant Indomar, Ltd.; Lawrence G. Cohen, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Indomar, Ltd. ("Indomar"), a Bahamian corporation, moves pursuant to Rule

60(b)(1) of the Federal Rules of Civil Procedure ("Rules") for an order correcting and amending a default judgment entered against it as defendant in an admiralty proceeding. The original action arose in connection with an alleged breach of a charter party between Indomar and East Asiatic Co., Ltd. ("East Asiatic"), the plaintiffs in the prior action and the current opponents to the motion to amend. Indomar defaulted, and judgment was had against it for $1,149,577.77, the entire amount claimed in East Asiatic's complaint, plus costs. Indomar moves to reduce that figure to $16,-883.76, asserting that the lesser sum represents the maximum liability exposed to the Court's jurisdiction in the original proceedings. East Asiatic contends that the Court properly possessed jurisdiction to award the sum contained in the judgment and pleads that it be permitted to stand. For the reasons stated below, Indomar's motion to correct and amend the judgment is granted.

## I.

■ East Asiatic began its action against Indomar by process of maritime attachment levied against $16,883.76 of defendant's assets located within the Southern District of New York. Since the unification of admiralty and civil procedure, *see* Order of Supreme Court of United States, 383 U.S. 1031 (1966), maritime attachment procedure has been governed by Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules").[1] Maritime attachment is, however, a traditional remedy whose "origin is to be found in the remotest history, as well of the civil as of the common law." *Manro v. Almeida,* 23 U.S. (10 Wheat.) 473, 490, 6 L.Ed. 369 (1825). The remedy has "a dual purpose: (1) to obtain jurisdiction of the respondent in personam through his property and (2) to assure satisfaction of any decree in libelant's favor." *Seawind Compania, S.A. v. Crescent Line, Inc.,* 320 F.2d 580 (2d Cir. 1963) (*"Seawind"*); *see Swift & Company Packers v. Compania Columbiana Del Caribe, S.A.,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950); *Chilean Line Inc. v. United States,* 344 F.2d 757, 760 (2d Cir. 1965); 2 E. Benedict, *Admiralty,* § 288 (6th ed. A. Knauth 1940) ("Benedict"). The historic rule, which is followed in this Circuit, is that "[t]he two purposes may not be separated . . . for security cannot be obtained except as an adjunct to obtaining jurisdiction." *Seawind, supra,* 320 F.2d at 582; 2 Benedict, *supra,* § 288.

■ East Asiatic overlooks this rule, however, and in substance contends that use of the maritime attachment process under Supplemental Rule B does not preclude the simultaneous assertion of pure in personam jurisdiction over defendant. Thus, East Asiatic alleges that this Court had in

---

1. Supplemental Rule B reads in pertinent part:

 "Attachment and Garnishment: Special Provisions

 (1) When Available; Complaint, Affidavit, and Process. With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or his attorney that, to the affiant's knowledge, or to the best of his information and belief, the defendant cannot be found within the district. When a verified complaint is supported by such an affidavit the clerk shall forthwith issue a summons and process of attachment and garnishment. In addition, or in the alternative, the plaintiff may, pursuant to Rule 4(e), invoke the remedies provided by state law for attachment and garnishment or similar seizure of the defendant's property. Except for Rule E(8) these Supplemental Rules do not apply to state remedies so invoked.

 (2) Notice to Defendant. No judgment by default shall be entered except upon proof, which may be by affidavit, (a) that the plaintiff or the garnishee has given notice of the action to the defendant by mailing to him a copy of the complaint, summons, and process of attachment or garnishment, using any form of mail requiring a return receipt, or (b) that the complaint, summons, and process of attachment or garnishment have been served on the defendant in a manner authorized by Rule 4(d) or (i), or (c) that the plaintiff or the garnishee has made diligent efforts to give notice of the action to the defendant and has been unable to do so."

personam jurisdiction[2] over Indomar not only by virtue of the maritime attachment but also through compliance with the standard requirements for in personam jurisdiction, *i. e.,* that Indomar had sufficient contacts with the forum and that substituted service of process was made in accordance with Rule 4. Making this assertion, however, East Asiatic misapprehends the nature of maritime attachment and the relationship of Supplemental Rule B to the main body of the Federal Rules of Civil Procedure. Unification of admiralty and civil procedure has not abrogated the traditional jurisdictional function of maritime attachment, and compliance with Supplemental Rule B does not constitute service of process under Rule 4.

 In admiralty, as in civil law, the court's direct in personam jurisdiction over defendant depends upon the latter's contacts with the forum and the correct service of process. *Ivanhoe Trading Co. v. M/S Bornholm,* 160 F.Supp. 900 (S.D.N.Y.1957); *Arpad Szabo v. Smedvig Tankrederi A.S.,* 95 F.Supp. 519 (S.D.N.Y.1951); *Belgian Mission for Economic Cooperation v. Zarati Steamship Co., Ltd.,* 90 F.Supp. 741 (S.D.N.Y.1950).* Maritime attachment, on the other hand, is available to the plaintiff only when the defendant is not "found" within the district. Supplemental Rule B(1). To determine whether defendant is "found" within the district "a two-pronged inquiry [is made]: first, whether [defendant] can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *United States v. Cia. Naviera Continental S.A.,* 178 F.Supp. 561, 563 (S.D.N.Y.1959); *see Chilean Line Inc. v. United States,* 344 F.2d 757, 760 (2d Cir. 1965); *Seawind, supra,* 320 F.2d at 582. If either inquiry produces a negative answer, attachment is permitted.[3] This two-pronged test results in a small group of cases where, in theory, plaintiff could acquire in personam jurisdiction either by traditional means or through maritime attachment. 2 Benedict, *supra,* § 288; 7A Moore's Federal Practice ¶ B.03. For example, a defendant having an agent in the district and doing business within the

---

**2.** All suits in admiralty are denominated either "in personam" or "in rem." The in rem proceeding, which does not concern us here, is against the thing itself and operates after plaintiff has acquired a lien against the property. "The lien and the proceedings *in rem* are, therefore, correlative—where one exists, the other can be taken, and not otherwise." *The Rock Island Bridge,* 73 U.S. (6 Wall.) 213, 215, 18 L.Ed. 753 (1867); *see* Supplemental Rule C. Suits in personam, like the one at bar, are against an individual and do not depend upon the acquisition of a maritime lien. Benedict states that

"[m]ost actions may be maintained either *in rem* (if there is a maritime lien on a *res* in the jurisdiction) or *in personam* (if the defendant or respondent can be personally served with process or reached by means of an attachment proceeding), or both *in rem* and *in personam.*" Benedict, *supra,* § 226.

**3.** Because maritime attachment operates on a defendant by tying up his property prior to the determination of his liability, *Thyssen Steel Corp. v. Federal Commerce & Navigation Co.,* 274 F.Supp. 18 (S.D.N.Y.1967), litigation in this area has largely turned on whether defendant could defeat an often onerous attachment by demonstrating that he is "found" within the district. The theory behind the typical maritime attachment controversy was expressed in *Federazione Italiana Dei Consorzi Agrari v. Mandask Compania De Vapores, S.A.,* 158 F.Supp. 107, 111 (S.D.N.Y.1957):

"In the usual case it is the libelant who asserts that the respondent's activities in the district are sufficient to make it amenable to service, and the respondent in turn denies that it was doing business in the district in this sense. Here the reverse is true for it appears to the advantage of the libelant to claim that the respondent is not doing business within the district so that it may be free to attach the very substantial funds standing to respondent's credit here, whereas the respondent affirmatively asserts that it is doing business here, and that it could have been served had the libelant been so minded."

*See Antco Shipping Company v. Yukon Compania Naviera, S.A.,* 318 F.Supp. 626 (S.D.N.Y. 1970) (attempted attachment of defendant's ship); McCreary, *Going for the Jugular Vein: Arrests and Attachments in Admiralty,* 28 Ohio St.L.J. 19 (1967).

The case at bar presents the unusual situation where plaintiff opts to commence proceedings by attaching a mere fraction of the claim asserted, and defendant chooses not to protect theses assets either by special appearance to dispute the attachment, Supplemental Rule E(8), or by general appearance to defend against the complaint.

state—but not within the district—would be subject either to maritime attachment jurisdiction or to pure in personam jurisdiction. However, there is no case cited to this Court wherein both methods of acquiring in personam jurisdiction were *simultaneously* employed. Nor can there logically be such a case, for such a holding would reduce maritime attachment to nothing more than a security lien. This cannot be done, for "[i]t is crystal clear that the historical purpose of the writ of foreign attachment is to compel the respondent's appearance. Although an incidental purpose thereof is to supply the libelant with security, this objective can only be obtained as an adjunct to jurisdiction." *D/S A/S Flint v. Sabre Shipping Corp.*, 228 F.Supp. 384, 388 (E.D.N.Y. 1964), *aff'd sub nom. Det Bergenske Dampskibesselskab v. Sabre Shipping Corp.*, 341 F.2d 50 (2d Cir. 1965) (*"Flint v. Sabre"*).

■ Unification of admiralty and civil procedure has done nothing to distort this basic principle, although East Asiatic apparently interprets the Notes of Advisory Committee on Supplemental Rule B ("Advisory Notes") as permitting the simultaneous acquisition of in personam jurisdiction by conventional process and by maritime attachment. This Court does not agree. The text in question reads as follows:

"A change in the context of the practice is brought about by Rule 4(f), which will enable summons to be served throughout the state instead of, as heretofore, only within the district. The Advisory Committee considered whether the rule on attachment and garnishment should be correspondingly changed to permit those remedies only when the defendant cannot be found within the state and concluded that the remedy should not be so limited.

"The effect is to enlarge the class of cases in which the plaintiff may proceed by attachment or garnishment although jurisdiction of the person may be independently obtained. This is possible at the present time where, for example, a corporate defendant has appointed an agent within the district to accept service of process but is not carrying on activities there sufficient to subject it to jurisdiction . . . or where, though the foreign corporation's activities in the district are sufficient to subject it personally to the jurisdiction, there is in the district no officer on whom process can be served." (Citations omitted).

■ The enlargement of which the Advisory Notes speak refers to a situation which prevailed prior to the unification of admiralty and civil procedure in 1966. At that time an admiralty defendant doing sufficient business in the district but subject to service only beyond its borders, although within the state, could be subjected to the in personam jurisdiction of the court solely through process of maritime attachment. This class of defendants is now amenable to traditional in personam jurisdiction through the statewide service permitted by Rule 4(f). However, the Advisory Notes make it plain that these defendants remain vulnerable to attachment, and thus a plaintiff may proceed against them either by Rule 4(f) process or by maritime attachment. At the same time, Supplemental Rule B continues to permit attachment by a plaintiff proceeding against a foreign corporation which, although "present" in the district through its activities, can be reached for service only through extraterritorial process under Rule 4(e) or 4(i). In other words, the Advisory Notes recognize that attachment continues to be an option in certain cases where pure in personam jurisdiction might be alternatively achieved over the same defendants. But plaintiff cannot compel the defendant's appearance through Rule 4 and, at the same time, attach its property through Supplemental Rule B. Compelling defendant's appearance through extra-district process obviates the need to compel that appearance through maritime attachment. This Court cannot conclude that in widening a class of cases in which plaintiff may choose his approach, the Advisory Committee intended to undermine the venerable jurisdictional rationale of maritime attachment.

■ Moreover, even if it is assumed that use of maritime attachment does not preclude the simultaneous use of Rule 4 process to achieve pure in personam jurisdiction over the defendant, East Asiatic has not accomplished service upon Indomar as mandated by Rule 4. East Asiatic argues that in complying with the notice provisions of Supplemental Rule B(2) it satisfied the service requirements of Rule 4 and cites the various references to Rule 4 in Supplemental Rule B to support its contention that Supplemental Rule B is "a statute of the United States . . . [which] provides for service of a summons . . . upon a party not an inhabitant of or found within the state in which the district court is held," as provided for in Rule 4. Plaintiff overlooks the fact that Supplemental Rule B in no way concerns service of process, which, indeed, is not required to effect maritime attachment under Supplemental Rule B. The Rule is by its own terms a form of process, and its operation confers jurisdiction on the court. Supplemental Rule B does not even direct that notice be given to defendant until such time as default judgment is to be entered. And notice is then given purely on the ground of "fairness," since "none is required by the principles of due process." Advisory Notes, Subdivision (2). The method of communicating this default notice is governed internally by Supplemental Rule B(2).

■ Although East Asiatic did comply with Supplemental Rule B(2) in notifying Indomar before default was entered, this notification was no more than that necessary to permit execution thereafter on the property attached, and bears no significance with respect to service of process under Rule 4. Nor may East Asiatic state that it has conformed to any of the other provisions of Rule 4. It has not complied with the Rule 4(e) alternative which permits service as provided by "any statute or rule of the court of the state in which the district court is held." It has not satisfied the requirements of New York Business Corporation Law § 307 (McKinney Supp.1975), which, in conjunction with New York CPLR § 302 (McKinney Supp.1975), permits service upon a non-domiciliary corporation transacting business within the state if service is made upon the Secretary of State. Finally, East Asiatic has not met any of the terms of Rule 4(i) relating to service in a foreign country, and it is not proceeding against an instate defendant within the contemplation of Rule 4(d)(3) and Rule 4(f).

## II.

■ Having determined that East Asiatic had but one base of in personam jurisdiction against Indomar, i. e., that which it acquired through maritime attachment, it remains only to determine the effect of a default judgment in these circumstances. Although the jurisdiction achieved through maritime attachment is denominated in personam, it is clear that, absent an appearance by defendant, the judgment had is in the nature of quasi in rem. Indeed, the term "quasi in rem" is used in the title of Supplemental Rule E, which concerns actions commenced by maritime attachment. See Supplemental Rule E. The United States Court of Appeals for the Second Circuit has referred to Supplemental Rule B(1) as "a quasi in rem proceeding." *Maryland Tuna Corp. v. MS Benares,* 429 F.2d 307, 311 (2d Cir. 1970); *see Societe Commerciale de Transports Transatlantiques (S.C.T.T.) v. S.S. "African Mercury",* 366 F.Supp. 1347 (S.D.N.Y.1973).

■ Although attachment may issue against property held for the defendant in the district up to the amount sued for, *see* Supplemental Rule B(1), "execution in proceedings commenced by maritime in personam attachments in which defendant has not been personally served or appeared cannot exceed the value of the attached property." 7A Moore's *Federal Practice* ¶ B.03 n.6 (2d ed. 1972); *see* 2 Benedict, *supra,* § 288. The same proposition is well established outside admiralty. In *Cooper v. Reynolds,* 10 Wall. 308, 19 L.Ed. 931 (1870), the Supreme Court discussed the limits of a judgment based on jurisdiction over the res rather than over the persona. "[T]he judgment of the court,

though in form a personal judgment against the defendant, has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the attached property is exhausted." *Id.* at 318–19, 19 L.Ed. 931; *see Freeman v. Alderson,* 119 U.S. 185, 7 S.Ct. 165, 30 L.Ed. 372 (1886); *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878). The judgment in such a case is not entitled to full faith and credit in another district. *See Sherman v. Kirshman,* 369 F.2d 886, 889 (2d Cir. 1966).

Although it is possible that East Asiatic could have achieved pure in personam jurisdiction over Indomar in this Court through the defendant's contacts with the forum and receipt of perfected service, it elected to proceed by means of a Supplemental Rule B attachment, which then represented the sole basis of the Court's jurisdiction over Indomar. Since Indomar did not appear to perfect the Court's in personam jurisdiction, *see Atkins v. Fibre Disintegrating Co.,* 85 U.S. (18 Wall.) 272, 21 L.Ed. 841 (1873),[4] East Asiatic's recovery is limited according to the principles of quasi in rem jurisdiction. In order to avoid possible harassment of the defendant through improper registration of an unenforceable judgment in another district, *see* 28 U.S.C. § 1963,[5] the judgment against Indomar must be reduced to $16,883.76, the extent of the property subjected to the process of maritime attachment.

Submit amended judgment in conformity herewith.

So ordered.

4. In a case commenced by maritime attachment, defendants made a general appearance. The court noted that "[t]his made their position just what it would have been if they had been brought in regularly by the service of process. In this aspect of the case all defects were cured and the jurisdiction of the court over their persons became complete. This warranted the decree *in personam* for the amount adjudged to the libellants." *Atkins v. Fibre Disintegrating Co., supra,* 85 U.S. at 298.

5. Section 1963 reads as follows:

"§ 1963. Registration in other districts

A judgment in an action for the recovery of money or property now or hereafter entered

in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien."