GERARD CONSTRUCTION,
INC., Plaintiff,

v.

MOTOR VESSEL VIRGINIA, her engines, boilers, etc.; Phillip N. Mosesso, Individually; Donald A. Fix, Individually; and Phillip N. Mosesso and Donald A. Fix d/b/a Sleps River Towing Company, Defendants.

Civ.A. No. 79–1172.

United States District Court,
W. D. Pennsylvania.

Oct. 15, 1979.

Stephen W. Graffam, Grogan, Graffam, McGinley & Solomon, Pittsburgh, Pa., for plaintiff.

John W. Murtagh, Jr., Pittsburgh, Pa., for defendants.

## OPINION

SNYDER, District Judge.

Gerard Construction, Inc. filed an in rem action against the Motor Vessel Virginia on a claim for the balance due on the sale of the M/V Virginia to Phillip N. Mosesso and Donald A. Fix, individually and doing business as Sleps River Towing Company, and for fuel and oil furnished to her in the total amount of $57,064, with interest. The individual Defendants have filed a Motion to Dismiss and a Motion for Vacatur or Reduction of Security. The Motion to Dismiss will be granted in part, and the Motion for Reduction of Security will be granted.

## I. BACKGROUND

The M/V Virginia, a 1940 diesel-powered tow boat, was acquired by Gerard Construction, a marine contractor, in May 1978 as partial payment for monies due on the construction of a coal loading dock. Having little use for the vessel in its construction work, Gerard entered into negotiations with Phillip Mosesso and Donald Fix on January 5, 1979. The parties initially contemplated a lease-sale arrangement but, on January 16, 1979, they executed a "Bill of Sale". The purchase price was $67,500, with a $12,000 cash payment to be made on the date of sale and a promissory note of $55,500 due March 2, 1979. A separate promissory note was delivered, but neither a security agreement nor a mortgage agreement was executed.

On January 17, 1979, at Mosesso's request, Gerard had a local distributor supply fuel and oil to the vessel. Gerard was billed and has since offered payment on this portion of the claim.

The Defendants moved to dismiss the complaint on the basis that money due on a contract of sale of a vessel is not within the admiralty jurisdiction.

## II. DISCUSSION

■ It is settled law that if a contract is related to a maritime service or a maritime transaction, action thereon is within admiralty jurisdiction. 1 *Benedict on Admiralty* § 182 (6th ed. 1974). There is, however, no bright line to be drawn from such a statement for " 'when a high-level abstraction such as "maritime" has to be used to draw a line between concrete cases', the 'test of maritime subject-matter' is difficult to apply." *Jack Neilson, Inc. v. Tug Peggy*, 428 F.2d 54 (5th Cir. 1970). The courts have held a contract for the *repair* of a vessel is maritime, but a contract for the *construction* or *rebuilding* of a vessel is not, although the distinction between rebuilding and repair is often difficult to draw. *See New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922).

Apparently, the "prevailing rule" is that a contract for the sale of a ship is not a maritime contract. *See Atlantic Lines, Ltd. v. Narwhal, Ltd.*, 514 F.2d 726 (5th Cir. 1975); *Richard Bertram & Co. v. Yacht, Wanda*, 447 F.2d 966 (5th Cir. 1971); *Flota Maritima Browning De Cuba, Sociadad Anonima v. Snobl*, 363 F.2d 733 (4th Cir.), *cert. denied* 385 U.S. 837, 87 S.Ct. 82, 17 L.Ed.2d 71 (1966); *The Ada*, 250 F. 194 (2nd Cir. 1918); *R. C. Craig Ltd. v. Ships of the Sea Inc.*, 401 F.Supp. 1051 (S.D.Ga.1975); *Puamier v. Barge BT 1793*, 395 F.Supp. 1019 (S.D.Va.1974); *R. C. Craig Ltd. v. Ships of .the Sea Inc.*, 345 F.Supp. 1066 (S.D.Ga.1972); *Industrial Equipment and Maritime Services, Inc. v. M/V Mr. Gus*, 333 F.Supp. 578 (S.D.Tex.1971); *Camper & Nicholsons, Ltd. v. Yacht "Fontainebleau II"*, 292 F.Supp. 734 (S.D.Fla.1968). In some cases, although followed, the rule was subjected to pointed criticism. *See, e. g., Jack Neilson, Inc. v. Tug Peggy, supra; Flota Maritima Browning De Cuba, Sociadad Anonima v. Snobl, supra; Flota Maritima Browning De Cuba v. The Ciudad De La Habana*, 181 F.Supp. 301 (D.Md.1960). Thus, in a lease-purchase agreement, the maritime aspects are held separable and

specific claims regarding lease aspects may be adjudicated in an admiralty court.

In *Jack Neilson, Inc. v. Tug Peggy, supra,* the court characterized the prevailing rule as inconsistent with basic principles governing the admiralty jurisdiction. One year later, in *Richard Bertram & Co. v. Yacht, Wanda, supra,* the same court affirmed, *per curiam,* a lower court's dismissal of an action in admiralty seeking to try title to a yacht, relying in part on the general rule. Four years after *Richard Bertram Co., supra,* the same court found that admiralty jurisdiction did not extend to contracts for sale of a vessel.

Professor Moore strongly advocates bringing contracts for *sales* of vessels within the admiralty jurisdiction. He summarizes his position (based in large part on the opinion of Chief Judge Thomsen in *Flota Maritima Browning De Cuba v. The Ciudad De La Habana, supra* ): the analogy to ship construction contracts (the basis of the rule) is of questionable validity. Apparently, a closer analogy could be drawn to agreements of charter and hire which are maritime contracts, and within the admiralty jurisdiction. 7A *Moore's Federal Practice* ¶ .245[2] (2d ed. 1979).

Gerard finds no definitive rulings by the United States Supreme Court or the Court of Appeals for the Third Circuit. However, several courts have held that a contract of sale of even a used vessel is not within admiralty jurisdiction, *see, e. g., R. C. Craig Ltd. v. Ships of the Sea Inc., supra.*

Judge Joseph F. Weis, Jr., as a District Judge (now of the Court of Appeals for the Third Circuit), succinctly stated:

"Few admiralty doctrines have received more criticism and with so little effect as that which holds that agreements for the construction of vessels are not maritime contracts and, hence, not within the purview of admiralty jurisdiction. This holding has been repeated many times by decisions of the Supreme Court and is now accepted as firmly established, albeit arguably inconsistent and illogical."

*Ohio Barge Line, Inc. v. Dravo Corp.,* 326 F.Supp. 863 (W.D.Pa.1971).

■ We thus hold here that the contract of sale is not a maritime contract.

Plaintiff's claim also alleges that after the sale of the ship, the Plaintiff supplied the vessel with fuel and oil. In its Motion to Dismiss, Defendants deny the Plaintiff supplied the goods. However, during the argument on the Defendant's Motion, they offered to place $1,564.00, the value of the fuel and oil furnished, into the Court's custody to free the Motor Vessel Virginia from the Court's custody.

■ Contracts to furnish supplies or accessories to a particular vessel are maritime in nature, *Houston-New Orleans, Inc. v. Page Engineering,* 353 F.Supp. 890 (D.La. 1972), and when the supplies are considered necessary, and fuel and oil are considered necessary, the contracts give rise to a maritime lien enforceable in an in rem action against a particular vessel. *See In re Queen Ltd.,* 361 F.Supp. 1009 (E.D.Pa.1973); *The Denelfred,* 59 F.2d 213 (E.D.Mich.1932). Since attachment or arrest of property can have an extremely disrupting effect upon the owners or possessors of the property, and thus upon maritime commerce, release by special bond is provided for under 28 U.S.C. § 2464, and by Rule E(5) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Rule E(5) provides in part:

*"Release of Property.*

(a) *Special Bond.* Except in cases of seizures for forfeiture under any law of the United States, whenever process of maritime attachment and garnishment or process in rem is issued the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court or of any appellate court. The parties may stipulate the amount and nature of such security. In the event of the inability or refusal of the parties so to stipulate the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plain-

tiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller. The bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 per cent per annum."

The right to obtain the release of arrested property upon the posting of adequate security is absolute and not subject to the court's discretion. 7A *Moore's Federal Practice* ¶ E.13[2] (2d ed. 1979). *See Worldwide Carriers Ltd. v. Aris Steamship Co.*, 290 F.Supp. 860 (S.D.N.Y.1968). The amount must be sufficient here to cover the amount of the Plaintiff's claim fairly stated with accrued interest and costs. 7A *Moore's Federal Practice* ¶ E.13[2] (2d ed. 1979). Since the Defendants agree that the amount claimed is owed, an appropriate security would be $1,564.00, the amount of the Plaintiff's claim.

The Defendants have offered to pay the amount of the claim into the court as provided by Local Rule 12, which states in part:

"Property seized by the marshal may be released as follows:

(a) In suits for sums certain, by paying into court the amount alleged to be due, with interest as claimed therein, up to the first day of the month next succeeding the last day to answer the complaint or next succeeding the payment into court, whichever is later, or by filing an approved stipulation for such alleged amount, with interest, and by payment into court of the costs of officers of the court already accrued, and by depositing also the sum of $250, to cover further costs; or in lieu of such deposit for costs giving a stipulation conditioned that the principal shall pay all costs awarded by the court, and, in case of appeal, by any appellate court, against him, it or them. The stipulation shall be in the sum of $250."

The M/V Virginia will be released upon the Defendants' payment into the Court of $1,564.00, plus $250.00 to cover costs.