ORBIS MARINE ENTERPRISES, INC., Plaintiff,

v.

TEC MARINE LINES, LTD., TEC Lines, Ltd., Penco Kancov, and Thomas Cheatham, Defendants.

No. 87 Civ. 60 (KC).

United States District Court, S.D. New York.

Nov. 9, 1988.

Erwin J. Shustak, Bizar, D'Allessandro, Shustak & Martin, New York City, for plaintiff.

Alan C. Rassner, Rassner, Rassner & Olman, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge.

The plaintiff entered a contract with the defendant TEC Lines, Ltd. to purchase marine shipping containers on that defendant's behalf, and also contracted to "arrange any required repairs" for the containers. *See* Exhibit A to Affidavit of Maria Fabros, executed July 2, 1987. The plaintiff complains that the defendants are liable for a debt of $35,922.31 arising from services rendered under the contract. The verified amended complaint alleges that jurisdiction lies under both 28 U.S.C. section 1332(a)(2), diversity of citizenship, and 28 U.S.C. section 1333, admiralty. *See* Verified Amended Complaint at para. 7.

On April 16, 1987, the plaintiff obtained from the late Honorable Edward Weinfeld, U.S.D.J., an order, pursuant to Rule B of the Supplemental Rules For Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure [hereinafter "Supplemental Rule B"], attaching a debt owed to either or both of the defendants TEC Marine Lines, Ltd.[1] and TEC Lines, Ltd.[2]

The action is before the court on the motion of the defendants TEC Lines, Ltd. and Thomas E. Cheatham to dismiss the amended complaint for lack of admiralty subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), or for defective service of process, pursuant to Fed.R.Civ.P. 12(b)(5).[3] Judge Weinfeld referred the

---

1. The plaintiff has discontinued the action against TEC Marine Lines, Ltd. *See* Stipulation and Order Discontinuing Action, dated Dec. 14, 1987, *Orbis Marine Enters. v. TEC Marine Lines, Ltd.*, No. 87 Civ. 60 (S.D.N.Y.).

2. The April 16 order reads, in relevant part:
    This action having been commenced by plaintiff, Orbis Marine Enterprises, Inc., by the filing of a Verified Amended Complaint and an Affidavit in support of plaintiff's request for the issuance of a Writ of Maritime Attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Verified Amended Complaint and the Affidavit filed with this Court on April 16, 1987, and it appearing from the Verified Amended Complaint and the Affidavit that defendants TEC Marine Lines, Ltd. ("TEC Marine") and TEC Lines, Ltd. ("TEC") cannot be found within this District and the requirements of Rule B of the Supplemental Rules for Admiralty [sic] and Maritime Claims of the Federal Rules of Civl [sic] Procedure having been satisfied, it is hereby
    ORDERED, that the Clerk of this Court forthwith issue a Summons with Process of Attachment and Garnishment against any monies in the form of debts and accounts payable, currently owed to defendants TEC Marine and/or TEC, by Ariel Maritime Group, Inc. ("Ariel"), having an office at 90 West Street, New York, New York and by Tagship, Inc. ("Tagship"), having an office at 7 Dey Street, New York, New York and ordering Ariel and Tagship to hold said monies in a segregated account awaiting the result of the pending action; and it is further
    ORDERED, that notice of this action be given to defendants by plaintiff or its counsel mailing to their last known addresses in Florida a copy of this Order, the papers upon which this Order is issued, including the Verified Amended Complaint, the Affidavit of Edward Devjani, Vice President of plaintiff Orbis sworn to April, 1987 and the Summons, by certified mail, return receipt requested and copies of all the foregoing by Federal Express or similar overnight expedited delivery service for which plaintiff shall obtain a receipt from that delivery service evidencing delivery of the above-mentioned documents upon defendants at their last known addresses[.]
    Apr. 16, 1987 Order at 1–2.

3. The moving defendants stated in their notice of motion that they were relying on both Fed.R.Civ.P. 12(b)(4) ("insufficiency of process") and Fed.R.Civ.P. 12(b)(5) ("insufficiency of service of process").
    An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge a noncompliance with the

question of service of process to Magistrate Gershon. The court is in receipt of the Magistrate's Report and Recommendation [hereinafter "Report"], as well as the objections of the moving defendants to the Magistrate's Report. Further facts will be discussed only as necessary.

## LEGAL ANALYSIS

### A. Admiralty Jurisdiction

■ "The precise categorization of the contracts that warrant invocation of the federal courts' admiralty jurisdiction has proven particularly elusive." *CTI–Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 379 (2d Cir. 1982). Neither the parties nor the court has located a case directly on point. The defendants argue that this court should analogize from the distinction in admiralty between contracts to lease, charter, or hire a vessel, which are held to be within admiralty jurisdiction, and contracts to purchase a vessel, which are held to be outside admiralty jurisdiction. *See CTI–Container Leasing Corp.*, 682 F.2d at 380 n. 4. The defendants argue that contracts to purchase containers similarly should be held to be outside admiralty jurisdiction, even though contracts to lease containers are held to be within admiralty jurisdiction. *See id.* at 381 (contract to lease containers

is maritime contract, within admiralty jurisdiction).

The court declines to make such an analogy. Containers are not the equivalent of vessels. Containers are deemed to be "necessaries" provided to vessels that may serve as the basis for the imposition of a maritime lien, pursuant to 46 U.S.C.App. section 971.[4] *See Foss Launch & Tug Co. v. Char Ching Shipping U.S.A., Ltd.*, 808 F.2d 697, 700 (9th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 96, 98 L.Ed.2d 57 (1987); *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd.*, 668 F.Supp. 225, 228 (S.D.N.Y.1987); *Transamerica ICS, Inc. v. M/V Panatlantic*, 1984 A.M.C. 489, 490 (S.D.Fla.1983); *Nautilus Leasing Servs. v. M/V Cosmos*, 1983 A.M.C. 1483, 1483 (S.D.N.Y.1983). Contracts to furnish necessaries, such as supplies or accessories, are maritime in nature. *See Gerard Constr., Inc. v. Motor Vessel Virginia*, 480 F.Supp. 488, 490 (W.D.Pa.1979); *Houston–New Orleans, Inc. v. Page Eng'g Co.*, 353 F.Supp. 890, 898–99 (E.D.La.1972). Goods and services are "furnished" whether they are leased, *see, e.g., Itel Containers Int'l Corp.*, 668 F.Supp. at 226, 231, or purchased outright. *See, e.g., The Everosa*, 93 F.2d 732, 733, 735 (1st Cir.1937). Maritime contracts are within the purview of admiralty jurisdiction. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); *CTI–Container*

---

provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint.
*United States v. Sharon Steel Corp.*, 681 F.Supp. 1492, 1499 n. 14 (D. Utah 1987) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1353 at 577–78 (1969) (footnotes omitted)); *see Chilicky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir.1986) (Rule 12(b)(4) designed "to challenge irregularities in the contents of the summons," while Rule 12(b)(5) designed to challenge "irregularities in the manner of delivery of the summons and complaint"), *rev'd on other grounds*, —— U.S. ——, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *Auburn Enlarged City School Dist. v. Coastal Envtl. Control, Inc.*, No. 87–CV–1624, slip op. at n. 1 (N.D.N.Y. June 30, 1988) (same) [available on WESTLAW, 1988 WL 70023] (LEXIS, Genfed library, Dist file). The

affidavit supporting the motion makes it clear that the defendants challenge only the manner of service of process. *See* Affidavit of Alan C. Rassner in Support of Motion to Dismiss, executed June 11, 1987, at 2. Therefore, Rule 12(b)(4) is not relevant to the motion.

**4.** That section reads:
Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.
46 U.S.C.App. § 971 (1982). A "prerequisite[ ] of a maritime attachment [is] that there be a maritime cause of action for which an action in personam is available." 7A J. Moore & A. Palaez, *Moore's Federal Practice* para. B.02 at B–54 (2d ed. 1988).

*Leasing Corp.,* 682 F.2d at 379; *Gerard Constr., Inc.,* 480 F.Supp. at 490 (quoting *Ohio Barge Line, Inc. v. Dravo Corp.,* 326 F.Supp. 863, 864 (W.D.Pa.1971)); 7A J. Moore & A. Palaez, *Moore's Federal Practice* para. .225 at 2701–02 (2d ed. 1988).

This does not conclude the matter. The settled rule has been that

[t]he fact that an agreement may be to furnish services, supplies or facilities that are unquestionably necessary for a vessel to engage in maritime commerce or navigation has not alone been deemed sufficient to invoke the admiralty jurisdiction. In addition, it has generally been held that, to be within the admiralty [jurisdiction], such an agreement must (at least until executed) relate to a particular, identifiable vessel.

7A J. Moore & A. Palaez, *Moore's Federal Practice* para. .230[3] at 2771 (2d ed. 1988); *see, e.g., Foss Launch & Tug Co.,* 808 F.2d at 703; *Gerard Constr., Inc.,* 480 F.Supp. at 490; *Page Eng'g Co.,* 353 F.Supp. at 898–99. The question is whether this contract is one such that the court should adhere to this general rule.

It is beyond dispute that "containerization has revolutionized maritime cargo-handling techniques." *CTI–Container Corp.,* 682 F.2d at 380. "The advantage this equipment offers is its transferability. If the equipment had to be earmarked for a particular vessel and (presumably) used only by that vessel, that advantage would be lost." *Itel Containers Int'l Corp.,* 668 F.Supp. at 230. The facts of this case illustrate this state of affairs. In the agreement between the plaintiff and TEC Lines, Ltd., the plaintiff "arrang[ed] to deliver the ocean freight containers from the point of storage to various ships and piers

*as required by TEC [Lines, Ltd.]."* Affidavit of Maria Fabros, executed July 2, 1987, at para. 6 (emphasis added).[5] Orbis assumed that the containers were destined "to be loaded on [TEC's] ships for the Caribbean." *Id.* Exhibit A.

Under these circumstances, the court concludes that it possesses admiralty jurisdiction[6] over this action. *Cf. Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.,* 310 U.S. 268, 270, 276–77, 281, 60 S.Ct. 937, 938, 941–42, 943, 84 L.Ed. 1197 (1940) (affirming Court of Appeals' affirmance of maritime lien against vessels where contract called for supplier to provide "the fuel oil requirements of any and all vessels owned, chartered, or operated" by purchaser); *Equilease Corp. v. M/V Sampson,* 793 F.2d 598, 600–01, 603 (5th Cir.) (en banc) (insurer of vessel entitled to maritime lien based on contract of insurance, despite absence of "actual delivery of something to the vessel"), *cert. denied,* 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986); *Itel Containers Int'l Corp.,* 668 F.Supp. at 231 ("furnishing" in 46 U.S.C. § 971 "may support a lien on a fleet of vessels," rather than only on particular vessels); *Transamerica ICS, Inc.,* 1984 A.M.C. at 490 ("for purposes of creating a valid maritime lien, it may not be essential, and indeed may not be desirable, that the container be ... earmarked for a particular vessel"). *But see Foss Launch & Tug Co.,* 808 F.2d at 703 (cargo containers leased in bulk to time-charterer of group of vessels for unrestricted use on board the vessels are not furnished to any particular vessel of the group, so that maritime lien is not available). It is impractical, as well as uneconomical, to require that the containers be

5. The court may consider matter outside the pleadings to resolve a challenge to the court's subject matter jurisdiction. *See Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986); *Burger v. Health Ins. Plan,* 684 F.Supp. 46, 49 n. 1 (S.D.N.Y.1988).

6. Of course, the defendants are entitled to present evidence on this issue at a later time. *Cf. Itel Containers Int'l Corp. v. Atlanttrafik Express Serv., Ltd.,* 668 F.Supp. 225, 226–27, 229–30, 231 (S.D.N.Y.1987) (denying motion for partial summary judgment on issue whether

plaintiff has right to maritime lien under 46 U.S.C. § 971, and stating that vessel owners can present evidence on the issue at trial). At this point, the plaintiff need only make a *prima facie* showing that subject matter jurisdiction exists. *See Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.,* 655 F.2d 938, 942 (9th Cir.1981); *cf. Birmingham Fire Ins. Co. v. KOA Fire & Marine Ins. Co.,* 572 F.Supp. 969, 971 (S.D.N.Y.1983) (same principle applicable to determination of motion to dismiss for lack of personal jurisdiction).

required by specific vessels, in order for admiralty jurisdiction to exist. This is especially true in these circumstances, since the plaintiff contracted to make deliveries to different ships at TEC Lines, Ltd.'s direction. The defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is denied.

## B. Service of Process

The moving defendants "accept the Magistrate's finding that proper service of process was made on them pursuant to [Judge Weinfeld's] Order of April 16, 1987 ..., but only with respect to the action based upon admiralty jurisdiction by reason of the attachment." Objections to Report and Recommendation of Nina Gershon, U.S. Magistrate, at 2. It appears, as will be seen, that there is some confusion as to the purpose of that order. Regarding the Magistrate's conclusion that TEC Lines, Ltd. was "served" in accordance with the April 16 order, the court accepts the Magistrate's factual findings, and concludes that TEC Lines, Ltd. received proper *notice* of the attachment.[7]

Regarding the sufficiency of service to confer personal jurisdiction under the grant of diversity jurisdiction, TEC Lines, Ltd. and Cheatham raise separate arguments. TEC Lines, Ltd. argues that service on Jerry Chester, President of TEC Marine Lines, Ltd., is not service on TEC Lines, Ltd. *See* Objections to Report and Recommendation at 3. Cheatham argues that service on a person of suitable age and discretion at his "former residence," followed by the mailing of copies of the summons and complaint to "that former residence" "is not adequate service of process." *Id.*

### 1. TEC Lines, Ltd.

■ The order of attachment signed by Judge Weinfeld issued against TEC Marine Lines, Ltd. and TEC Lines, Ltd., and not against Cheatham individually. *See supra* note 2. Thus, the action against TEC Marine Lines, Ltd. having been discontinued, *see supra* note 1, the liability of TEC Lines, Ltd. is limited to the value of the property attached. The plaintiff, though, has asserted that there is diversity of citizenship between itself and TEC Lines, Ltd. *See* Verified Amended Complaint at paras. 7–8. The question of personal jurisdiction under admiralty attachment, as opposed to general *in personam* jurisdiction under the grant of diversity jurisdiction, is not an academic one.

> "Although attachment may issue against property held for the defendant in the district up to the amount sued for, *see* Supplemental Rule B(1), 'execution in proceedings commenced by maritime in personam attachments in which [the] defendant has not been personally served or appeared cannot exceed the value of the attached property.'"

*East Asiatic Co., Ltd. v. Indomar, Ltd.,* 422 F.Supp. 1335, 1341 (S.D.N.Y.1976) (quoting 7A *Moore's Federal Practice* para. B.03 n. 6 (2d ed. 1972)); *see id.* at 1338, 1342 (judgment after default reduced from $1,149,577.77 to $16,883.76, "the ex-

---

7. The April 16 Order was made pursuant to Supplemental Rule B, *see supra* note 2, and specifically ordered that the defendants be given *notice* of the attachment. *See id.* This is all that Supplemental Rule B provides for.

   **Notice to Defendant.** No judgment by default shall be entered except upon proof, which may be by affidavit, (a) that the plaintiff or the garnishee has given notice of the action to the defendant by mailing to the defendant a copy of the complaint, summons, and process of attachment or garnishment, using any form of mail requiring a return receipt or (b) *that the complaint, summons, and process of attachment or garnishment have been served on the defendant in a manner authorized by Rule 4(d) or (i),* or (c) that the plaintiff or the garnishee has made diligent efforts to give notice of the action to the defendant and has been unable to do so. Rule B(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (emphasis added).

tent of the property subjected to the process of maritime attachment").

If the plaintiff wishes to proceed against TEC Lines, Ltd. under general principles of *in personam* jurisdiction, as would be the case if the plaintiff seeks a recovery from TEC Lines, Ltd. that is greater than the recovery it can achieve through its attachment, the order of attachment will have to be vacated. The "plaintiff cannot compel the defendant's appearance through [service of process pursuant to Fed.R.Civ.P.] 4 and, at the same time, attach its property through Supplemental Rule B." *East Asiatic Co., Ltd.*, 422 F.Supp. at 1340. Thus, it is appropriate to determine whether service has been effected on TEC Lines, Ltd. pursuant to Rule 4, to determine whether the plaintiff is compelled to act. "[C]ompliance with Supplemental Rule B does not constitute service of process under Rule 4." *Id.* at 1341; *see supra* note 7 (quoting Supplemental Rule B(2)(b)).

Rule 4 of the Federal Rules of Civil Procedure provides three alternative means for serving legal process on a corporation incorporated in a foreign country.[8] A plaintiff can serve the corporation either by mail, following the dictates of Fed.R.Civ.P. 4(c)(2)(C)(ii), or by following one of various procedures for making service in the foreign country, *see* Fed.R.Civ.P. 4(i), or by delivering a copy of the legal process to any one of certain individuals who are deemed to be representatives of the corporation. *See* Fed.R.Civ.P. 4(d)(3); Fed.R. Civ.P. 4(c)(2)(C)(i).[9]

No evidence has been presented that the plaintiff's service by regular mail conformed to the requirements of Rule 4(c)(2)(C)(ii). The court concludes that TEC Lines, Ltd. was not served in this manner. Nor was service made pursuant to Rule 4(i).[10] Thus, the court must determine whether the plaintiff personally served the corporation.

The plaintiff's process server indicates in his affidavit that he attempted to personally serve TEC Lines, Ltd. The process server proceeded to the offices of TEC Marine Lines, Ltd. at 1867 Northwest 97th Avenue in Miami, Florida (the same address to which any notice permitted or required by TEC Lines and TEC Marine Lines' purchase agreement is to be given, directed to Cheatham, on TEC Lines' behalf, *see* Exhibit E to Affidavit of Erwin J. Shustak, executed Dec. 17, 1987, at 13), where he spoke with Jerry Chester, President of TEC Marine Lines, Ltd. *See* Affidavit of Mike T. Stewart, executed Sept. 3, 1987, at paras. 2–3. The process server asked Chester if TEC Lines, Ltd. "also had offices in the same building, and he responded that TEC had been sold, and that he, Mr. Chester, had reconstituted TEC [Lines, Ltd.] as TEC Marine [Lines, Ltd.]." *Id.* at para. 3. The process server states that Chester's response satisfied him that it was appropriate to serve TEC Lines, Ltd. by serving Chester. *See id.* The court concludes that this did not constitute proper service on TEC Lines, Ltd.

First,
[t]he general rule is that 'a mere sale of corporate property by one company to another does not make the purchaser liable for the liabilities of the seller not assumed by it.' ... Liability for obligations of a selling corporation may be imposed on the purchasing corporation when (1) the purchaser expressly or im-

---

**8.** The Verified Amended Complaint alleges on information and belief that TEC Lines, Ltd. "is a corporation duly organized and existing under the laws of the Cayman Islands." Verified Amended Complaint at para. 3.

**9.** Rule 4(c)(2)(C)(i) permits the court to recognize as effective service made pursuant to New York law. New York Civil Practice Law and Rules ("CPLR") § 311(1) (McKinney 1972) is consistent with Fed.R.Civ.P. 4(d)(3), but it does list certain individuals who may be served, such as directors and cashiers, who are not included in the federal rule.

**10.** Judge Weinfeld's April 16 Order did not direct the manner of service of process pursuant to Fed.R.Civ.P. 4(i)(1)(E). *See supra* note 2.

pliedly agrees to assume such obligations; (2) the transaction amounts to a consolidation or merger of the selling corporation with or into the purchasing corporation; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for such obligations.

*Shane v. Hobam, Inc.*, 332 F.Supp. 526, 527–28 & n. 1 (E.D.Pa.1971) (applying New York law) (citation omitted). Florida, whose law is applicable to the agreement between TEC Lines, Ltd. and TEC Marine Lines, Ltd., *see* Ex. E to Shustak Aff. at para. 8.1, adheres to this "traditional corporate law rule." *See Bernard v. Kee Mfg. Co.*, 409 So.2d 1047, 1049, 1051 (Fla.1982); *Anders v. Jacksonville Elec. Auth.*, 443 So.2d 330, 331 (Fla. 1st Dist.Ct.App.), *petition for review denied mem.*, 451 So.2d 847 (Fla.1984). The agreement states explicitly that TEC Marine Lines, Ltd. assumes only specific liabilities or obligations, and that TEC Lines, Ltd. shall be solely responsible for the satisfaction of any liabilities and obligations not assumed. *See* Ex. E to Shustak Aff. at Article II. The transaction clearly was not a merger, for "[i]n a merger a corporation absorbs one or more other corporations, which thereby lose their corporate identity." *Knapp v. North Am. Rockwell Corp.*, 506 F.2d 361, 365 (3d Cir.1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975). In addition, TEC Lines, Ltd. agreed to do one of two things after the purchase occurred: either dissolve or use a name other than "TEC Lines." *See* Ex. E to Shustak Aff. at para. 5.1. That TEC Lines, Ltd. still functions is further indicated by the assertion that "at an appropriate time, TEC Lines, Ltd., will again engage in ocean shipping," *see* Affidavit of Thomas E. Cheatham, executed Jan. 8, 1988, at para. 2, and the fact that in 1987, more than a year after executing the asset purchase agreement with TEC Marine Lines, Ltd.,

*see* Ex. E to Shustak Aff., TEC Lines, Ltd. was prosecuting in its own name a suit (the "Florida action") against the party whose debt the plaintiff has attached. *See* Exhibits B & C to Letter from Erwin J. Shustak to Hon. Kevin [sic] Conboy, dated Mar. 31, 1988.

The only conclusion to be drawn is that the two corporations are in fact different entities.[11] The fact that TEC Lines, Ltd. sold some or all of its accounts receivable to TEC Marine Lines, Ltd., *see* Letter from Erwin J. Shustak to Magistrate Nina Gershon & Ex. C (Jan. 6, 1988), does not convince the court otherwise. It follows logically that Chester, though President of TEC Marine Lines, Ltd., is not therefor an officer, director or other representative of TEC Lines, Ltd. Delivery to him did not constitute service on TEC Lines, Ltd.

Second, there is nothing in the process server's affidavit that indicates that Chester was a designated agent of TEC Lines, Ltd. Therefore, the service was invalid. *See Albilia v. Hillcrest Gen. Hosp.*, 124 A.D.2d 499, 500, 508 N.Y.S.2d 10, 10–11 (1st Dep't 1986) (mem.) (delivery to receptionist at professional building in which professional corporation did business not proper service, because receptionist was not person who could receive process on corporation's behalf under CPLR § 311(1)); *cf. De Vore v. Osborne*, 78 A.D.2d 915, 915–16, 432 N.Y.S.2d 919, 920–21 (3d Dep't 1980) (mem.) (upholding service on corporation when process server was directed by receptionist at corporation's headquarters to employee in charge, process server apprised employee of his mission, and served summons on employee, who "gave no indication that he was not authorized to" accept service). Although it was prudent to serve Chester, the court concludes that, viewing the circumstances objectively, delivery to Chester did not give TEC Lines, Ltd. fair notice that it was a defendant in this action.

11. Magistrate Gershon stated that this "is undisputed." *See* Report at 289–90.

The process server did attempt to effect substituted service, pursuant to CPLR sections 308(2) and 313 (McKinney 1972), on Cheatham, President of TEC Lines, Ltd. This service, even if effective (to be discussed *infra*), would not constitute service on TEC Lines, Ltd. While it has been held that "service of a single summons upon an officer of a corporate defendant who is also an individual defendant is effective service on both defendants," *Port Chester Elec. Co. v. Ronbed Corp.*, 28 A.D.2d 1008, 1008, 284 N.Y.S.2d 9, 10 (2d Dep't 1967) (mem.), this rule applies only if the plaintiff makes personal service on the individual defendant under, in this case, CPLR sections 308(1) and 313, which will be sustained as personal service on the corporation under CPLR section 311(1). The rule does not apply if the plaintiff makes substituted service on a person of suitable age and discretion pursuant to CPLR sections 308(2) and 313, because the service does not meet the requirement of personal delivery contained in CPLR section 311(1). *See Lakeside Concrete Corp. v. Pine Hollow Bldg. Corp.*, 104 A.D.2d 551, 551–52, 479 N.Y.S. 2d 256, 256–57 (2d Dep't 1984) (mem.), *aff'd mem.*, 65 N.Y.2d 865, 493 N.Y.S.2d 309, 482 N.E.2d 1225 (1985).

In conclusion, the court has acquired admiralty jurisdiction over the defendant TEC Lines, Ltd. to the extent of the value of the property attached. The court has not acquired *in personam* jurisdiction over TEC Lines, Ltd. In this circuit, when service of process is invalid, and the defendant still may be served within the statute of limita-

tions period, the proper course is to quash the service, rather than dismiss the action on this ground. *See Zola v. Gordon*, 685 F.Supp. 354, 377 (S.D.N.Y.1988) (citing cases). The court lacks sufficient information to determine the proper statute of limitations to apply to the action.[12] The appropriate course is to quash the service on TEC Lines, Ltd. The issue of service within or without the limitations period can be addressed if it becomes ripe.

To be clear, because the court has admiralty jurisdiction over the plaintiff's claim against TEC Lines, Ltd., should the plaintiff secure a judgment against TEC Lines, Ltd., the plaintiff would be entitled to execute against the debt properly attached pursuant to Supplemental Rule B. The plaintiff is not compelled to vacate its attachment. However, should the plaintiff serve TEC Lines, Ltd. with legal process in order to acquire general *in personam* jurisdiction over it, based on diversity of citizenship, and the service is valid, the plaintiff will be obligated to move to vacate its attachment. *See East Asiatic Co., Ltd.*, 422 F.Supp. at 1341.

### 2. *Thomas Cheatham*

The Magistrate's Report states that the plaintiff complied with Judge Weinfeld's order as to the manner of effecting service on Cheatham. *See* Report at 5. The conclusion that service on Cheatham was valid cannot stand. In the first place, Judge Weinfeld's order only applied to TEC

---

**12.** Because the plaintiff's claim arises in diversity, this court is bound to apply New York law on the issue of the appropriate statute of limitations. *See, e.g., Canadian Overseas Ores Ltd. v. Compania De Acero Del Pacifico S.A.*, 528 F.Supp. 1337, 1340 (S.D.N.Y.1982) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 107, 112, 65 S.Ct. 1464, 1469, 1471, 89 L.Ed. 2079 (1945)), *aff'd*, 727 F.2d 274 (2d Cir.1984). This would include New York's "borrowing statute," N.Y. CPLR § 202 (McKinney 1972), *see id.*, which applies because the plaintiff is a foreign corporation, *see* Verified Amended Complaint at para. 1. *See, e.g., American Lumbermens Mut. Casualty Co. v. Cochrane*, 129 N.Y.S.2d 489, 490–91

(Sup.Ct.), *aff'd per curiam*, 284 A.D. 884, 134 N.Y.S.2d 473 (1st Dep't 1954), *aff'd mem.*, 309 N.Y. 1017, 133 N.E.2d 461 (1956). Questions that are unanswerable at this point due to insufficient information include where the plaintiff's cause of action accrued, *see* N.Y. CPLR § 202, whether the plaintiff can benefit from any toll arising from the filing of this action, and whether TEC Lines, Ltd. and Cheatham might be united in interest, so that valid service on Cheatham within the statute of limitations period might be used to support service on TEC Lines, Ltd. beyond the limitations period.

Marine Lines, Ltd. and TEC Lines, Ltd. *See supra* note 2. In the second place, the giving of notice to any defendant under Supplemental Rule B, which is what the order intended, *see id.*, does not qualify as service of process under Rule 4. *See* discussion *supra* at 11. Because the Magistrate believed that "service was effective upon plaintiff's compliance with Judge Weinfeld's order directing service," *see* Report at 5, she did not address the effectiveness of personal or substituted service made on Cheatham. *See id.*

Under Rule 4(d)(1),[13] personal service may be made by leaving copies of the summons and complaint "at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." Cheatham objects that the address where the process server served his son, who unquestionably is a person of suitable age and discretion residing at 18845 S.W. 95th Street, Miami, Florida, *see* Affidavit of Shawn Cheatham, executed Nov. 3, 1987, at 1 (son is eighteen years of age), is not his actual dwelling house or usual place of abode. *See* Supplemental Affidavit of Thomas E. Cheatham, executed July 15, 1987, at para. 3 (asserting the defendant "has not lived in that house for seven years"). Cheatham also submits affidavits from his two sons, in support of this contention. *See* Affidavit of Shawn Cheatham, executed Nov. 3, 1987, at 1; Affidavit of Thomas E. Cheatham, IV, executed Nov. 3, 1987, at 1.

The plaintiff's process server states that "[he] asked Sean [sic] Cheatham if his father was in. Sean replied that his father was not home right then. [The process server] then asked Sean when his father would be home. Sean replied that his father would be home later." Stewart Aff. at para. 6. In his affidavit, Shawn Cheatham does not deny making these statements to the process server. *See* S. Cheatham Aff.

The court accepts the process server's account of his conversation with Shawn. With those facts, only one conclusion can be drawn. 18845 S.W. 95th Street was the defendant Thomas Cheatham's "usual place of abode." Otherwise, his son would not have responded that the defendant was not home right then, but would be home later. Instead, Shawn would have said something that indicated that his father did not use 18845 S.W. 95th Street as his usual place of abode. Therefore, the defendant Thomas Cheatham was properly served at his usual place of abode. This conclusion is buttressed by the fact that calls to telephone information failed to provide any address for Cheatham other than 18845 S.W. 95th Avenue.[14] *See* Affidavit of Don W. Allan, executed Sept. 4, 1987, at para. 3. The motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(5) is denied as to defendant Cheatham.

## CONCLUSION

Admiralty jurisdiction exists over the plaintiff's claims. There is no general *in personam* jurisdiction over the defendant TEC Lines, Ltd. There is general *in personam* jurisdiction over the defendant Thomas E. Cheatham.[15] SO ORDERED.

---

13. Unlike its New York state counterpart, Rule 4(d)(1) does not require that delivery to a person of suitable age and discretion be followed by delivery by regular mail to the defendant's last known residence. *Compare* Fed.R.Civ.P. 4(d)(1) *with* N.Y. CPLR § 308(2) (McKinney 1972).

14. There is confusion as to whether the address was on 95th Street or 95th Avenue. *Compare* Stewart Aff. at para. 6 ("Avenue") *with* S. Cheatham Aff. at 1 ("Street"). This is insignificant. Actual delivery to Shawn Cheatham has not been contested.

15. "In accordance with the Court's order dated September 12, 1988, this is an amended version of the Court's Memorandum Opinion and Order dated August 14, 1988."

## APPENDIX

### REPORT AND RECOMMENDATION

March 30, 1988

NINA GERSHON, United States Magistrate:

Defendants TEC Lines, Ltd. and Thomas Cheatham have moved to dismiss the complaint against them on two grounds: the claim does not fall within the court's admiralty and maritime jurisdiction and the service of process on the defendants was inadequate. The late Judge Edward Weinfeld referred the dispute over service of process to me. The parties have taken discovery on the issue and served a variety of affidavits. Based upon the record before me, I am satisfied that the plaintiff, in serving process on the moving defendants, fully complied with Judge Weinfeld's order directing the form of service and therefore that, insofar as the motion to dismiss rests on a claim of improper service, it should be denied.

In an order dated and filed April 16, 1987, Judge Weinfeld granted a maritime attachment and issued the following directions with regard to service:

> ORDERED, that notice of this action be given to defendants by plaintiff or its counsel mailing to their last known addresses in Florida a copy of this Order, the papers upon which this Order is issued, including the Verified Amended Complaint, the Affidavit of Edward Devjani, Vice President of plaintiff Orbis sworn to April, 1987 and the Summons, by certified mail, return receipt requested and copies of all the foregoing by Federal Express or similar overnight expedited delivery service for which plaintiff shall obtain a receipt from that delivery service evidencing delivery of the above-mentioned documents upon defendants at their last known addresses;

Thus, Judge Weinfeld directed service of process in two ways, by certified mail, return receipt requested, and by Federal Express, in each case to defendants' last known addresses. It is undisputed that plaintiff used both methods of service and, in addition, attempted personal delivery to the same addresses it used in the methods prescribed in the order. The defendants' position is that service was made to improper addresses and therefore was ineffectual.

TEC Lines

According to the affidavits of defendant Cheatham, he is a director and president of the defendant TEC Lines, Ltd., a Cayman corporation, and he was "given the Federal Express delivery" on May 9, 1987. However, he states, the address of 1867 N.W. 97th Avenue, Miami, Florida, given on the summons delivered with the Federal Express delivery, is not the address for TEC Lines.

It is not disputed that in 1985 TEC Lines sold all of its assets to Tec Marine Lines, Ltd. and that, at that time, Tec Marine Lines took over the offices at 1867 N.W. 97th Avenue in Miami at which service was made. According to Cheatham, "Tec Marine Lines is a newly organized Florida corporation, who succeeded TEC Lines' agent as tenant of the premises at 1867 N.W. 97 Avenue, Miami, Florida". Cheatham Afft., July 15, 1987, par. 7.

TEC Lines seeks to have service deemed inadequate by asserting that service was on the wrong address while failing to indicate any last known address other than the one plaintiff used. It seems clear that, as plaintiff argues, that address was in fact TEC Lines' last actual place of doing business. In any event, plaintiff has adequately established that it was defendant's last known address. Although it is undisputed that TEC Lines and Tec Marine Lines are separate corporations, it is also undisputed that TEC Lines is no longer doing business,

having sold its assets, including the name TEC Lines, to Tec Marine Lines (see Ex. E to Shustak Afft. of Dec. 11, 1987), and that there is no later known address for TEC Lines than the one used by plaintiff.

### Thomas E. Cheatham

Service was made at 18845 S.W. 95th Street, Miami, Florida. An affidavit from Shawn Cheatham states that he is the son of Thomas E. Cheatham and that at the time court papers were served at 18845 S.W. 95th Street, Miami, Florida, he was living there with his mother and his brother Thomas E. Cheatham IV, and that his father had not been living there for years. The affidavit of Thomas E. Cheatham IV states that he is the 23 year old son of Thomas E. Cheatham and that at the time court papers were served on him at that address his father was not living in the house and had not lived in the house for many years.

Defendant Cheatham does not claim that he does not own the house at which service was made but relies on the affidavits of his sons saying that he did not live there at the time service was attempted. Defendant Cheatham has not provided the court with any other address at which he now lives nor identified any other prior address than the one at which service was made. Despite diligent efforts, plaintiff has been unable to ascertain any other address for him. Under these circumstances, plaintiff correctly argues that the address at which the court papers were delivered and mailed and which admittedly was defendant's residence before his divorce should be deemed his last known address.

As noted earlier, in addition to the mail service, which defendants do not dispute occurred, plaintiff also made repeated attempts to accomplish personal service, although not required by Judge Weinfeld's order. At this time, plaintiff no longer disputes that personal delivery was made, not on the defendant Cheatham, but on his

son. However, since service was effective upon plaintiff's compliance with Judge Weinfeld's order directing service, the effectiveness of personal service is not in issue.

In sum, I find that plaintiff has fully complied with Judge Weinfeld's order as to the manner of effecting service on both defendants.

Copies of this report and recommendation are today being served upon counsel, who are hereby advised that any objections to this report should be served and filed, with a copy to me, in conformity with Rule 72(b) of the Federal Rules of Civil Procedure.